Jimmie L. HASTIE, Plaintiff,

v.

William J. HENDERSON, Postmaster General, Defendant.

Civil Action No. 94–1437 SSH.

United States District Court, District of Columbia.

Oct. 27, 2000.

As Amended Nov. 20, 2000.

Mitchell Kastner, Highland Park, NJ, for plaintiff.

Anthony Michael Alexis, Sr., Asst. U.S.Atty., U.S. Attorney's Office, Washington, DC, for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant's motion for summary judgment on Counts I and II of plaintiff's second amended complaint, plaintiff's opposition, and defendant's reply thereto.[1] Upon careful consideration of the entire record, defendant's motion for

---

1. Count III of the second amended complaint is no longer before the Court. Plaintiff and defendant both asserted in their responses to the Court's August 28, 1998, request for clarification of claims that they believed Count III was dismissed during a status conference before United States Magistrate Judge Patrick Attridge on February 24, 1997. However, neither party can find an order embodying the dismissal, and the Court's review of a tape of that status conference reveals no reference to Count III. See Tape 9–97, lines 418–990 (2/24/97). Plaintiff states that if the Court determines Count III still to be pending, she now moves to dismiss it. See Pl.'s Resp. to Aug. 28, 1998, Order, at 2. The Court accordingly dismisses Count III of the second amended complaint.

summary judgment is granted. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice,* 140 F.3d 1077, 1079–80 (D.C.Cir.1998). Nonetheless, the Court sets forth its reasoning.

## Background

Plaintiff, Jimmie L. Hastie, is a black retired employee of the United States Postal Service ("Postal Service"). The Postal Service hired her in March 1989 for an EAS–23 position at Postal Service Headquarters. Plaintiff retired from the Postal Service in 1993. Her complaint seeks relief pursuant to Title VII of the Civil Rights Act of 1964 based on three distinct events that occurred during her employment.

The first event occurred when, in the fall of 1989, the Postal Service advertised a vacancy for a Procurement Specialist, an EAS–25 position in the Research and Engineering Division of the Office of Procurement. Plaintiff applied for the position, along with over 100 other individuals. The review panel recommended six finalists, including one black male and one white female; plaintiff was not one of the finalists. Plaintiff filed her first Equal Employment Opportunity ("EEO") complaint (Case No. 6–F–0190–90) alleging race and sex discrimination regarding her non-selection to the Procurement Specialist position. Plaintiff alleges that after she filed this complaint, her work product was subjected to close scrutiny by a supervisor, Keith Strange.

The second event occurred in 1992, when plaintiff received a "Very Good," instead of an "Outstanding," merit evaluation. Defendant had set a cap of ten percent on the number of "Outstanding" ratings that could be given in any single year. In 1992, the number of employees receiving an "Outstanding" evaluation exceeded the ten percent cap by seven employees. Defendant organized a committee to review the "Outstanding" ratings and recommend changes. As a result of the review and upon advice from other supervisors, Strange reduced plaintiff's evaluation, as well as six white employees' evaluations, to "Very Good." In December 1992, plaintiff filed her second EEO complaint (Case No. 6–0–0057–93) regarding this merit evaluation reduction because of alleged race discrimination and retaliation for filing her first EEO complaint.

The third event also occurred in 1992 when the Postal Service underwent a nationwide restructuring, which reduced the number of available positions in plaintiff's former department. All postal employees had to compete for the remaining positions within the new structure. Plaintiff applied for an EAS–25 position in the new Office of Procurement. Only one manager, Frank Hansen, offered plaintiff a position in the new structure, and he offered her an EAS–23 position of Procurement Specialist, contingent on her improving her interpersonal skills, which she accepted. Hansen submitted the list to the new vice president of the department, Darrah Porter, for approval. Porter, however, decided not to approve the placement, allegedly because of his concerns about her interpersonal skills and a recent incident where plaintiff encountered a secretary to another supervisor Juanda Barclay in the elevator, formed her hand into the shape of a gun, pointed her hand towards the secretary's head, and said: "Your boss, bang, bang!" Plaintiff was angry because she had interviewed with Barclay for an EAS–25 position during the restructuring, and Barclay told other managers that it was the worst interview she ever had. Plaintiff was then transferred to a Career Transition Center, supposedly with the guarantee that she would be placed in another Postal Service position, and that she would permanently retain her former grade and salary. In December 1992, plaintiff filed an informal complaint of discrimination, alleging that her nonplacement in any position in the procurement department was due to retaliation for filing EEO complaints. In March 1993, plaintiff filed her

third formal EEO complaint (Case No. 6–0–0159–93), alleging that the decisions to rescind her placement to the EAS–23 position and to not place her in any other position in the new Postal Service structure were motivated by race, sex, and retaliation discrimination.[2] Plaintiff then filed this lawsuit, alleging race, sex, and reprisal discrimination. Defendant moves for summary judgment on all claims.

### Claims Presented

The Court stated at the beginning of this Opinion that Counts I and II of plaintiff's second amended complaint are at issue on this summary judgment motion. Count I asserts race and sex discrimination claims regarding plaintiff's nonpromotion to the EAS–25 Procurement Specialist position in 1990. Count II asserts a reprisal claim that her EEO complaint filed in 1990 prevented her from assuming the title of Contracting Officer except for short periods of time in 1991, caused the reduction in her merit evaluation in 1992, and prompted an improper transfer out of her EAS–23 Senior Procurement Specialist position to the Postal Service's Career Transition Center during the restructuring in 1992. Additionally, the introduction of the second amended complaint states that the plaintiff's action includes a reprisal claim for when defendant rescinded her placement in the downsized Postal Service.

While Count I appears properly pleaded and briefed, there has been confusion over what the other claims encompass. The parties have briefed the summary judgment motion as if the second amended complaint contains broader claims than actually asserted: for example, the parties discuss the 1992 merit evaluation and the nonplacement in the downsized Office of Procurement in 1992 with regard not only to the reprisal claim, which is asserted in the complaint, but also to sex and race discrimination claims, which are not asserted in the complaint. The parties also brief claims of sex, race, and reprisal discrimination with regard to an "unlawful nonpromotion claim" for the fact that defendant did not place her in an EAS–25 position during the restructuring, which is not asserted anywhere in the second amended complaint. This confusion prompted the Court to issue an Order on August 28, 1998, requesting clarification of the claims.

In response to the Court's Order, defendant maintains that it simply "briefed each matter as if it were before the Court in an abundance of caution." Consequently, it urges the Court to consider only the claims that are explicitly asserted in the second amended complaint. Plaintiff's counsel, however, argues that all the claims briefed in the summary judgment motion were asserted in her third EEO complaint, and he does not know why plaintiff's prior counsel did not draft the second amended complaint in conformity with plaintiff's third EEO complaint. Plaintiff urges the Court to overlook this oversight and decide the motion based on the broader claims; defendant should suffer no prejudice since it has litigated the case as if plaintiff's second amended complaint asserted these broader claims. If the Court denies the summary judgment motion, plaintiff will then move for leave to amend her complaint to plead Count II properly. Alternatively, plaintiff requests leave to amend the complaint to make Count II broader in conformity with her

---

**2.** It appears that plaintiff's third EEO complaint alleged only reprisal discrimination for these incidents. *See* Def.'s Mot. for Summ. Judgment, Ex. 14–C (copy of EEO Complaint of Discrimination in the Postal Service, Case No. 6–0–0159–93). However, in the Postal Service's Amended Acceptance of plaintiff's third EEO complaint, sent to plaintiff with a November 17, 1993, letter, the Postal Service explicitly stated that plaintiff's complaint asserts race, sex, and retaliation discrimination. *See* Def.'s Mot. for Summ. Judgment, Ex. 14–D (copy of Nov. 7, 1993 letter to plaintiff's counsel from Linda L. Marszall, Appeals Review Specialist, EEO Compliance and Appeals). The Court therefore accepts that all three bases were presented at the administrative level.

third EEO complaint.[3] Pl.'s Resp. to 8/28/98 Order, at 7.

The Court declines to add the claims not explicitly asserted in the second amended complaint because the Court finds no merit in those claims. A motion to amend should not be granted if adding the new claims would be futile. *See Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C.Cir. 1996). Adding meritless claims would be futile. Furthermore, considering the multiple opportunities plaintiff has had to amend her complaint, there is no excuse for her failure to have asserted her claims properly. *See Mittleman v. U.S.*, 997 F.Supp. 1, 10 (D.D.C.1998) ("Denial of leave to amend is appropriate where a party has had sufficient opportunity to state a claim but has failed to do so").

For the sake of clarity, the Court outlines below the claims that are properly before the Court as well as the claims the Court declines to add. The Court will discuss all of the claims, including the ones not being added, in order to show that adding those claims would be futile.

| Alleged Incident | Claims Before Court | Claims Not Added |
| --- | --- | --- |
| 1990 nonpromotion to the EAS–25 Procurement Specialist Position | race and sex discrimination | |
| 1992 reduction in merit evaluation | reprisal discrimination | race and sex discrimination |
| 1992 nonplacement in downsized Postal Service | reprisal discrimination | race and sex discrimination |
| 1992 nonpromotion to EAS–25 position in downsized Postal Service | | race, sex, and reprisal discrimination |

## Analysis

Defendant seeks summary judgment on all of plaintiff's claims for failure to state a *prima facie* case. Defendant also contends that it is entitled to summary judgment because plaintiff has failed to provide evidence from which a reasonable jury could conclude that defendant's asserted legitimate nondiscriminatory reasons for its conduct are pretexts for discrimination. As to plaintiff's claim of sex discrimination in her 1992 merit evaluation, defendant also moves for summary judgment because plaintiff has failed to exhaust her administrative remedies.[4] The Court first considers the exhaustion of administrative remedies defense, and next considers the substance of plaintiff's claims.

3. Plaintiff has not formally moved to amend the complaint, nor has she attached the requisite proposed amended complaint. *See* LCvR 7.1(i). However, because plaintiff has fully indicated what claims she would add to an amended complaint, and because the parties have briefed the complaint as if these claims were included, the Court will construe the request as a formal motion.

4. Defendant also moves for summary judgment on plaintiff's claims of sex and race discrimination and unlawful nonpromotion related to the 1992 restructuring of plaintiff's department, asserting untimely administrative exhaustion; that is, that plaintiff presented these claims at the administrative level but in an untimely fashion. Defendant did not, however, explicitly assert this defense during the administrative proceedings. As noted by plaintiff, Title VII's time restrictions are not jurisdictional and thus may be subject to waiver or equitable estoppel. *See Park v. Howard University*, 71 F.3d 904, 907 (D.C.Cir. 1995); *Kizas v. Webster*, 707 F.2d 524, 544–45 (D.C.Cir.1983). The Court does not address the difficult question of whether defendant's failure to explicitly assert its untimely exhaustion defense during administrative proceedings constituted a waiver of that defense, *see Bowden v. United States*, 106 F.3d 433, 438–39 (D.C.Cir.1997), because it concludes that plaintiff has failed to establish a *prima facie* case as to these claims or to provide evidence supporting the conclusion that defendant's asserted legitimate, nondiscriminatory reasons are pretexts for discrimination. The Court's analysis of these claims is presented fully in the text.

## I. Standard of Review

Summary judgment may only be granted if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, all evidence and inferences must be viewed in a light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In Title VII cases, courts must view summary judgment with special caution because discriminatory intent and proof of disparate treatment are difficult to establish. *See Albritton v. Kantor*, 944 F.Supp. 966, 970 (D.D.C.1996); *Ross v. Runyon*, 859 F.Supp. 15, 21–22 (D.D.C.1994). If a reasonable factfinder in a Title VII case could infer discrimination based on the evidence submitted, then summary judgment is inappropriate. *See Albritton*, 944 F.Supp. at 970; *Hayes v. Shalala*, 902 F.Supp. 259, 264 (D.D.C.1995).

This does not, however, preclude the use of summary judgment in Title VII cases. A plaintiff in a Title VII case retains the burden of supporting allegations of retaliation and pretext "with affidavits or other competent evidence showing that there is a genuine issue for trial." *Hayes*, 902 F.Supp. at 263. To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to "genuine issues of material fact in the record." *Id.* at 263–64. As the court in *Hayes* stated, "[e]vidence of discrimination or pretext that is 'merely colorable' or 'not significantly probative'

cannot prevent the issuance of summary judgment." *Id.* at 264 (quoting *Johnson v. Digital Equip. Corp.*, 836 F.Supp. 14, 15 (D.D.C.1993)).

## II. Exhaustion of Administrative Remedies

■ Before filing a Title VII suit in federal court, a plaintiff must file an administrative complaint with the agency being charged with the violation. *See* 42 U.S.C. § 2000e–16(c). If the plaintiff subsequently files a lawsuit, her claims are limited in scope to those claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park*, 71 F.3d at 907 (internal quotation omitted); *see Christopher v. Billington*, 43 F.Supp.2d 39, 47 (D.D.C.1999). Title VII claims must at least arise from "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Park*, 71 F.3d at 907 (internal quotation omitted). Although the administrative charge requirement should not be construed as a heavy technical burden, a court cannot interpret an administrative charge so liberally as to permit a litigant to bypass the administrative process. *Id.*

The Court finds that plaintiff properly exhausted her administrative remedies as to all the claims being considered by the Court, except for her claim of sex discrimination with regard to her 1992 reduced merit evaluation. Her second EEO complaint regarding the 1992 merit evaluation alleged only race and reprisal discrimination. Furthermore, the Court concludes that plaintiff's sex discrimination claim was not so similar to the claims for race and reprisal discrimination that an administrative investigation on that basis could reasonably have been expected to ensue. *See id.* (concluding that a national origin hostile work environment claim, asserted for the first time in lawsuit, was not sufficiently similar to national origin discrimination claim asserted in administrative charge); *Oates v. Discovery Zone*, 116 F.3d 1161

(7th Cir.1997) (excluding a racial harassment claim from federal suit because plaintiff's EEOC complaint asserted only discriminatory discharge and retaliation). Permitting plaintiff to assert a sex discrimination claim at this stage would frustrate the purposes of giving the employing agency notice and an opportunity to resolve plaintiff's complaint internally. *See Loe v. Heckler,* 768 F.2d 409, 420 (D.C.Cir.1985). Because this claim would be barred for failure to satisfy Title VII's administrative exhaustion requirement, the Court concludes that adding the claim would be futile.

### III. Plaintiff's Remaining Title VII Claims

In Title VII employment cases, the Supreme Court has established a familiar three-step process under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207, (1981). First, the plaintiff bears the burden to establish, by a preponderance of the evidence, a *prima facie* case of discrimination. Meeting this burden creates the presumption that unlawful discrimination occurred. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. To establish a *prima facie* case of race or sex discrimination, plaintiff must allege facts demonstrating that (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for a position the employer was seeking to fill; (3) plaintiff was rejected; and (4) the employer continued to seek applicants with plaintiff's qualifications. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To establish a *prima facie* case of discrimination based upon reprisal, plaintiff must allege facts demonstrating that (1) plaintiff engaged in a protected activity; (2) plaintiff was subjected to adverse personnel action subsequent to, or contemporaneously with, such protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Jones v. Washington Metropolitan Area Transit Authority,* 205 F.3d 428, 433 (D.C.Cir.2000); *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985); *Hayes,* 902 F.Supp. at 263. The causal connection element of the *prima facie* case may be established by proof that "the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell,* 759 F.2d at 86.

Once plaintiff establishes a *prima facie* case, the burden shifts to defendant to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the employer's action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Defendant does not have to persuade the court that it was actually motivated by the proffered reasons. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. If defendant satisfies this burden, the McDonnell–Burdine presumption drops out, and "the factual inquiry proceeds to a new level of specificity." *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

The burden shifts back to plaintiff to prove, by a preponderance of the evidence, that defendant's reason was a pretext for intentional discrimination. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To meet this burden, plaintiff must prove both that defendant's reason is false, and that discrimination was the real reason. *Carter v. Rubin,* 14 F.Supp.2d 22, 37 (D.D.C.1998) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The burden of persuasion remains with plaintiff at all times. *See Burdine,* 450 U.S. at 256, 101 S.Ct. 1089.

### A. *1990 Promotion Decision: sex and race discrimination*

 Plaintiff alleges that defendant's 1990 decision not to select her for an EAS–25 position for which over 100 people ap-

plied was based on race and sex discrimination. The Court concludes that plaintiff has established a *prima facie* case, but that summary judgment should be granted in favor of defendant because plaintiff has failed to submit evidence from which a rational factfinder could infer that defendant's asserted reason is a pretext for intentional discrimination.

It is uncontested that plaintiff, as a black female, is a member of a protected class and that she was qualified for the EAS–25 position. Furthermore, a white male—someone outside of the protected class—was ultimately selected for the position she sought. Accordingly, the Court concludes that plaintiff has established a *prima facie* case of sex and race discrimination.

The Court finds, however, that defendant has rebutted the presumption by articulating a legitimate, nondiscriminatory reason for not selecting plaintiff for the position. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Defendant asserts that it believed the six final candidates it chose were more qualified for the position, not because of any discriminatory reason. Because the Court finds that defendant articulated a nondiscriminatory reason for its challenged conduct, the presumption of discrimination is dropped.

Plaintiff now must show that defendant's proffered reason is merely a pretext for race and sex discrimination. The Court finds that she fails to do so. Plaintiff does not contend that the finalists or the person selected for the EAS–25 position were unqualified; she simply alleges that she was better qualified. She specifically contends that she was more qualified than the candidate selected to fill the position because she had more procurement experience than he did and held an MBA while he did not. However, these two factors are only a few of numerous factors listed in a position announcement as being relevant to the selection process. As noted by defendant, plaintiff does not make any sort of comparative analysis regarding those qualifica-

tions, nor does she point to any other objective evidence supporting her contention that she was a superior candidate to some of the finalists or to the person ultimately selected for the position. Furthermore, the fact that two of the six finalists were a black man and a white woman further undermines plaintiff's contention that defendant's decision not to select her was motivated by race and sex discrimination.

The Court " 'may not second-guess an employer's personnel decision absent demonstrably discriminatory motive.' " *Fischbach v. District of Columbia,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (quoting *Milton v. Weinberger,* 696 F.2d 94, 100 (D.C.Cir. 1982)). In light of the foregoing, the Court concludes that plaintiff has failed to submit evidence from which a rational factfinder could infer that defendant's asserted reason for its conduct is a pretext for discrimination.

### B. *1992 Merit Evaluation: race and reprisal discrimination*

Plaintiff's second claim alleges that her receipt of a "Very Good," rather than an "Outstanding," merit evaluation in 1992 was based upon reprisal discrimination. Plaintiff also seeks to amend her claim to add an allegation of race discrimination. The Court grants summary judgment for defendant on the retaliation claim, and denies addition of the race discrimination claim.

#### (1) *Retaliation*

The Court finds that plaintiff has failed to establish a *prima facie* case of retaliation. It is undisputed that plaintiff engaged in a statutorily protected activity by filing an EEO complaint regarding the 1989 promotion decision. *See* 42 U.S.C. § 2000e–3(a). It is also undisputed that plaintiff was subjected to adverse personnel action subsequent to her protected activity—she was given a "Very Good," rather than an "Outstanding," merit evaluation. Plaintiff fails, however,

to establish a causal connection between the protected activity and the adverse employment action.

A causal connection between the protected activity and the adverse employment action may be demonstrated by facts indicating that (1) the employer had knowledge of the employee's protected activity; and (2) the adverse personnel action took place shortly after that activity. *See Mitchell,* 759 F.2d at 86; *Hayes,* 902 F.Supp. at 263. However, "the time lapse between a plaintiff's participation in the protected activity and an employer's adverse action, and what raises an inference of reprisal, depends on the particular situation." *Batson v. Powell,* 912 F.Supp. 565, 577 n. 15 (D.D.C.1996); *see Garrett v. Lujan,* 799 F.Supp. 198, 202 (D.D.C.1992) (citing cases).

■ Plaintiff's EEO activity took place in 1990, after defendant did not promote her to the EAS–25 position, and plaintiff's merit evaluation was downgraded from "Outstanding" in 1992. Prior to 1992, plaintiff had never received an "Outstanding" rating from the managers who supervised her. While plaintiff's supervisor may have known that she had filed an EEO complaint, the Court finds that, given the facts of this case, the passage of nearly two years between the events prevents the finding of a causal connection. *See Clark v. Chrysler Corp.,* 673 F.2d 921 (7th Cir. 1982) (two years too long to support an inference); *Devera v. Adams,* 874 F.Supp. 17 (D.D.C.1995) (period of eight months does not strongly suggest causal link); *Garrett,* 799 F.Supp. at 202 (period of approximately a year too long to infer retaliation); *Juarez v. Ameritech Mobile Communications, Inc.,* 746 F.Supp. 798 (N.D.Ill.1990) (period of almost six months too long to support an inference); *Parrott v. Cheney,* 748 F.Supp. 312 (D.Md.1989) (period of less than four months too long to support an inference). *But see Globus v. Skinner,* 721 F.Supp. 329 (D.D.C.1989) (holding two years sufficient to support inference of retaliation because plaintiff's

participation in litigation against defendant ended only a few months before plaintiff was laid off and resulting tensions still existed). The Court therefore grants defendant summary judgment on this claim.

■ Even if plaintiff had established a *prima facie* case, the Court would have granted summary judgment in favor of defendant because defendant has articulated a legitimate nondiscriminatory reason for its action, and plaintiff has not produced evidence that the proffered reason was merely a pretext for discrimination. Defendant submitted evidence that plaintiff's supervisor initially made only one "Outstanding" rating which he gave to another employee, Susan Brownell. Defendant contends that plaintiff's supervisor subsequently gave plaintiff an "Outstanding" rating upon her request and only then because he believed that he could not take plaintiff's interpersonal skills into account in determining such ratings. It is uncontested that only ten percent of Postal Service employees could be given an "Outstanding" rating in a single year. In 1992, the number of employees who received an "Outstanding" rating exceeded the ten percent cap by seven. To reduce the number of "Outstanding" ratings, a committee met to review the ratings and recommend changes. Plaintiff was one of seven employees who had their evaluations reduced to conform with the ten percent cap. The other six employees whose ratings were reduced were white. Defendant has stated, through affidavits, that plaintiff's supervisor—upon consideration of all permissible factors and in light of the fact that only one employee in plaintiff's department could receive an "Outstanding" rating—decided to award the "Outstanding" evaluation to Brownell rather than plaintiff.

Plaintiff has failed to establish that a genuine issue of material fact exists regarding the question of whether defendant's proffered reasons for reducing plaintiff's evaluation from "Outstanding" to "Very Good" are pretextual or to provide

any objective evidence of discriminatory intent. She has provided no information regarding Brownell's performance—other than her own self-serving and conclusory statement that she completed more work than Brownell—which would permit this Court to conclude that defendant's reason for giving Brownell rather than plaintiff an "Outstanding" rating is pretextual. *See Fischbach,* 86 F.3d at 1183; *Ramey,* 915 F.2d at 735; *Milton v. Weinberger,* 696 F.2d at 100. Nor has she demonstrated that her supervisor's reliance on the "subjective" criterion of plaintiff's interpersonal skills was impermissible or that it masked discriminatory intent. *See Fischbach,* 86 F.3d at 1183 ("Once the employer has articulated a nondiscriminatory explanation for its action ... the issue is not the correctness or desirability of [the] reasons offered for its action ... but whether the employer honestly believes in the reasons it offers."). The Court therefore finds that summary judgment for defendant is appropriate here.

### (2) *Race Discrimination*

■ The Court finds that plaintiff has failed to establish a *prima facie* case of race discrimination, and therefore, adding such a claim would be futile. It is undisputed that plaintiff can establish part of a *prima facie* case, as she is a member of a protected class, and a white employee received the one "Outstanding" rating which her supervisor was permitted to give.

Plaintiff fails, however, to establish the second element of her *prima facie* case—that she deserved an "Outstanding" rating. Plaintiff merely states that her rating was changed from "Outstanding" to "Very Good." Plaintiff states that her work was "of an outstanding quality," but fails to provide the Court with any evidence supporting this allegation. Such a unsupported, conclusory assertion is insufficient to defeat a motion for summary judgment. *See Hayes,* 902 F.Supp. at 264.

Even assuming that plaintiff could establish a *prima facie* case, defendant has articulated a

legitimate, nondiscriminatory reason for its actions and plaintiff has not submitted any evidence from which a reasonable factfinder could conclude that this reason is a pretext for discrimination; this is discussed fully in the previous section. Accordingly, the Court declines to add this claim of race discrimination beause doing so would be futile.

### C. *1992 Nonplacement in downsized Postal Service*

The nationwide restructuring of the Postal Service which occurred in 1992 resulted in a reduced number of positions at Postal Service Headquarters as a whole and in plaintiff's department in particular. Employees were required to compete for the remaining positions. Darrah Porter, vice president of plaintiff's former department, made those selections with the aid of department managers. Porter requested that each manager recommend who should be offered a position in that manager's department.

Several managers mentioned that plaintiff had problems with her interpersonal skills, and defendant contends that, because of that perceived concern, only one manager—Frank Hansen—was willing to offer plaintiff a position. She was offered an EAS–23 position upon the condition that she improve those skills. Subsequently, however, plaintiff was accused of having made an inappropriate comment about a manager, Juanda Barclay, who had recently interviewed her for a promotion and had commented to other supervisors that plaintiff's interview was the worst she had ever had. The Postal Service investigation of this incident determined, and she admits, that she approached Barclay's secretary in a crowded elevator, shaped her hand like a gun, and stated "Your boss, bang, bang." Based upon this "elevator incident" and other concerns regarding plaintiff's problems interacting with others, defendant contends that it decided not to select plaintiff for a permanent position

within her former department. Instead, plaintiff was transferred to the Transition Center—at no loss of grade, pay, or benefits—to be reassigned to another office.

Plaintiff contends that the decision not to place her in her former department following the restructuring was in retaliation for filing an EEO claim in 1990. Plaintiff also claims that this decision was the result of sex and race discrimination, and therefore, seeks to add these claims to her complaint. As for plaintiff's retaliation claim, the Court concludes that plaintiff has failed to provide any evidence supporting her contention that the legitimate nondiscriminatory reason articulated by defendant for its decision is pretextual.[5] Accordingly, the Court grants summary judgment in favor of defendant on the retaliation claim, and denies plaintiff's motion to add the sex and race discrimination claims.

### (1) Retaliation

■ It is uncontested that plaintiff has satisfied the first element of establishing a *prima facie* case of retaliation: participation in a statutorily protected activity. She has failed, however, to satisfy the second element which requires evidence of an adverse personnel action subsequent to, or contemporaneously with, her protected activity. *See Mitchell,* 759 F.2d at 86; *Hayes,* 902 F.Supp. at 263. Plaintiff contends that defendant's decision to transfer her to the Transition Center rather than placing her in her former department constitutes an adverse action under Title VII. Plaintiff's transfer, however, cannot be considered an adverse action.

In *Taylor v. FDIC,* 132 F.3d 753 (D.C.Cir.1997), this Circuit stated that "[f]ederal courts cannot be wheeled into action for every workplace slight, even one

that was possibly based on protected conduct." *Taylor,* 132 F.3d at 765. Thus, certain actions may not qualify as being adverse actions. This Circuit recently followed a "clear trend of authority" that a "purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Brown v. Brody,* 199 F.3d 446, 455 (D.C.Cir.1999) (internal quotation omitted). The *Brown* Court therefore set forth this rule:

> [A] plaintiff who is made to undertake ... a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncracies of personal preference are not sufficient to state an injury.

199 F.3d at 457. Applying that standard to the *Brown* case, our Circuit found that the plaintiff, who was not demoted or discharged but was temporarily reassigned to a position she thought undesirable and was later not selected for a position she desired, did not suffer an adverse employment action. In *Medina v. Henderson,* 1999 WL 325497, at *1 (D.C.Cir. Apr.30, 1999), the court found that the Postal Service's decision to transfer plaintiff from Washington, D.C., to Denver did not constitute an adverse action where there was no material change in her position.

---

5. Although plaintiff's claim asserts that her nonplacement in the new structure was due to race, sex, and retaliation discrimination, the Court notes that in plaintiff's Amended Statement of Genuine Issues of Material Fact, she does not dispute paragraph 43 of defendant's Statement of Material Facts Not in Dispute. That paragraph states: "Mr. Port-

er's decision not to place plaintiff in the new structure was not based on her race, sex or prior EEO activity. In fact, when Mr. Porter made his decision, he did not even know what plaintiff's race was. He also did not know at that time that plaintiff had previously engaged in EEO activity."

Here, plaintiff's transfer to the Transition Center was temporary, and did not result in a loss of salary or benefits. The Court concludes that plaintiff's transfer did not rise to the level of an adverse action pursuant to Title VII and, accordingly, grants summary judgment in favor of defendant.

■ Even if plaintiff could establish a *prima facie* case of retaliation, the Court still would grant summary judgment in defendant's favor because plaintiff has failed to provide evidence from which the Court could infer that defendant's asserted nondiscriminatory reason for its decision not to place plaintiff in her restructured department was a pretext for discriminatory intent. She does not deny that she was informed by Hansen that her placement in a position with him was contingent upon her development of her interpersonal skills. Nor does she deny that the elevator incident occurred or that her conduct was inappropriate. She provides no evidence that other individuals involved in comparable incidents or with similar problems were treated more favorably than she was. Although she contends that defendant's consideration of her interpersonal skills as part of its decision not to place her in her former department masks discriminatory intent, she provides no evidence that such skills were not considered in decisions regarding the placement of individuals not within the relevant protected classes nor does she provide any other evidence from which discriminatory intent could reasonably be inferred.[6]

### (2) *Sex and Race Discrimination*

■ Plaintiff seeks to add claims of race and sex discrimination for the decision not to place her in her former department after the restructuring. Plaintiff is able to establish part of a *prima facie* case of both sex and race discrimination, being a black

female. However, as explained above, she has not shown that she was qualified for the position, or that the other applicants for the position were less qualified. Even if plaintiff were able to establish a *prima facie* case of discrimination, plaintiff provides no evidence that defendant's asserted reason for its decision was a pretext for discrimination or any evidence from which a rational factfinder could infer discrimination, as explained in the prior discussion of her retaliation claim. Plaintiff has not rebutted defendant's evidence that Porter, the supervisor who made the decision not to place her in the restructured Postal Service, was unaware of her race or prior EEO activity. As noted above, the Court " 'may not second guess an employer's personnel decision absent demonstrably discriminatory motive.' " *Fischbach,* 86 F.3d at 1183 (D.C.Cir.1996) (quoting *Milton v. Weinberger,* 696 F.2d 94, 100 (D.C.Cir. 1982)). In light of the foregoing standard and plaintiff's failure to point to any evidence suggesting that defendant's action was the result of discrimination, the Court denies the motion to add claims of race or gender discrimination regarding plaintiff's nonplacement in her restructured department.

### D. *1992 Nonpromotion to EAS–25 position in downsized Postal Service*

Not only does plaintiff allege that defendant unlawfully denied her a position at all during the restructuring, but also that defendant did not promote her to an EAS–25 position during the restructuring due to race and sex discrimination and unlawful retaliation. These claims are not contained in plaintiff's second amended complaint, and therefore, plaintiff seeks to amend her complaint to add these claims.

To the extent that plaintiff's claims are based upon defendant's failure to place her in an EAS–25 position in any department

---

**6.** The Court notes that defendant has submitted evidence that employees who had filed EEO complaints were placed in the restructured department, while plaintiff has submitted no evidence to the contrary or which in any way suggests that defendant discriminated against such employees in decisions related to the restructuring.

during the restructuring, her claim would fail for lack of exhaustion of administrative remedies. A letter dated November 17, 1993, from the EEO Compliance and Appeals Office specifically noted that a claim that plaintiff was not selected for an EAS–25 position in departments other than the Office of Procurement was not within the scope of that EEO complaint. *See* Ex. 14–D to Def.'s Mot. for Summ. Judgment. There is no other indication that this claim was brought within the scope of any other EEO complaint.

To the extent that plaintiff's claims are based upon the EAS–25 position in the Office of Procurement for which she interviewed with Barclay, a black female, plaintiff has failed to establish a *prima facie* case. To establish a *prima facie* case of race or sex discrimination with this type of nonpromotion claim—where plaintiff alleges that she was denied a promotion to a vacant position—the relevant inquiry is whether plaintiff was rejected for the position and a person outside of her protected class was selected. *Cones v. Shalala,* 199 F.3d 512, (D.C.Cir.2000). Plaintiff has not met this standard. She has not presented any evidence, or even alleged, that a person outside of her protected class was selected for the position, or that it remained open. Furthermore, even if she could establish a *prima facie* case, she has provided no evidence from which a rational factfinder could infer that plaintiff's nonselection for that position was due to discrimination rather than to her poor interview with Barclay (whose criticism thereof prompted the elevator incident).

The Court also cannot find that plaintiff has established a *prima facie* case of retaliation based on this nonpromotion claim. Plaintiff has not shown that (1) plaintiff engaged in a protected activity; (2) plaintiff was subjected to an adverse personnel action subsequent to, or contemporaneously with, such protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action. The Court therefore declines to add these claims based on a nonpromotion claim.

### Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment. An appropriate Judgment accompanies this Opinion.

SO ORDERED.