**Linda BOYD, Plaintiff,**

v.

**John W. SNOW, Secretary of the Treasury, Defendant.**

**No. CIV.A. 01–1818 RMC.**

United States District Court, District of Columbia.

Sept. 1, 2004.

---

June Dorothy Kalijarvi, Margaret E. Johnson, Kalijarvi, Chuzi & Newman, P.C., Washington, DC, for Plaintiff.

Heather Jean Kelly, Whiteford, Taylor & Preston, L.L.P., Mark E. Nagle, Diane Marie Sullivan, Washington, DC, for Defendant.

### MEMORANDUM OPINION

COLLYER, District Judge.

Linda Boyd brings this action against her employer, the Internal Revenue Service ("IRS"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e *et seq.*[1] She asserts that her first-level supervisor, Joel Helke, sexually harassed her; that the agency retaliated against her after she reported his alleged harassment; and that Mr. Helke violated the Privacy Act, 5 U.S.C. § 552a(b), by disclosing her rebuttal statement to her June 1999 performance evaluation to others in the office. Pending before the Court is the IRS's motion for summary judgment. For the following reasons, the motion will be granted in part and denied in part. Judgment will be granted in the IRS's favor on Ms. Boyd's retaliation claim, but trial will proceed on her sexual harassment and Privacy Act claims.

### I.

On July 6, 1998, Ms. Boyd began working as a trial attorney in the IRS's Office of Chief Counsel, Field Services Division ("FS Division"), Financial Institutions and Products Branch ("FIP Branch"). Previously, she had clerked for a judge on the Maryland Court of Special Appeals, had worked in private practice, and had served in the Office of the Attorney General of Maryland. According to Ms. Boyd, she was hired at the IRS "at the grade 13, step 10 and after one year [she was to] be promoted to a grade 14, step 10." Pl.'s Dep. at 27. From July 6, 1998, to June 20, 1999, Mr. Helke was Chief of the FIP Branch and thus Ms. Boyd's first-level supervisor. Deborah Butler, then Assistant Chief Counsel of the FS Division, and Curtis Wilson, then Deputy Assistant Chief Counsel, were Ms. Boyd's second-level supervisors during that same time period.

Ms. Boyd alleges that Mr. Helke "started harassing and intimidating her, making inappropriate sexual remarks, touching himself in private areas, and creating a hostile work environment almost immedi-

1. In a prior memorandum opinion and order, the Court dismissed Ms. Boyd's tort claims against Mr. Helke and substituted the United States as the sole defendant for those claims.

ately after [she] began working at the agency and continued for most of the one year period of his supervision of [her]." Pl.'s Mem. of Pts. & Auths. in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp.") at 3. Specifically, she asserts that Mr. Helke backed her into a file cabinet or wall and touched her shoulders or arms once in October 1998, twice in November 1998, once in December 1998, once in January 1999, and twice in February 1999. Pl.'s Dep. at 65–69, 72–79, 79–81, 90–92, 109. Ms. Boyd also contends that "any time [she] saw [Mr. Helke] he would invariably make a sexual reference of some sort or he would stand there and grab his penis and testicles and rearrange himself." *Id.* at 53. His remarks allegedly included, "I wish I were well-hung" and "I'm having trouble getting it up." *Id.* at 51.

Ms. Boyd initially complained about Mr. Helke's conduct to Patrick Putzi and Eileen Shatz following the alleged incidents in October and November 1998 and February 1999, respectively. Mr. Putzi and Ms. Shatz were senior, non-supervisory attorneys assigned to Ms. Boyd's section. Ms. Boyd later voiced her concerns to Teri Culbertson, Technical Assistant for the Assistant Chief Counsel, on March 5, 1999. Ms. Culbertson suggested that Ms. Boyd talk about her problem with Mr. Wilson, which she did on March 10 or 11, 1999. During her first meeting with Mr. Wilson, Ms. Boyd told him "about Helke's harassment, including the physical part, but downplayed the physical part because she was terrified of what Helke would do if he found out." Pl.'s Opp. at 5. She also asked to be transferred out of the FS Division. Ms. Boyd had two other similar discussions with Mr. Wilson in March and one in May.

On May 13, 1999, Ms. Boyd met with Ms. Butler and Mr. Wilson regarding Mr. Helke's treatment of her. Ms. Boyd again asked for a transfer. The next day, Ms.

Butler and Mr. Wilson met with Carol Nachman, Special Counsel, and Mr. Helke. Both Ms. Nachman and Mr. Helke denied Ms. Boyd's allegations. On May 17, 1999, Ms. Butler and Mr. Wilson contacted Judith Dunn, Associate Chief Counsel, and Daniel Wiles, Deputy Associate Chief Counsel. Mr. Wiles recommended that Ms. Butler contact Elaine Green, Director of the Equal Employment Opportunity ("EEO") Office. Thereafter, Ms. Green assigned Bea Bernfeld to interview Ms. Boyd and Mr. Helke. Both interviews occurred by June 1, 1999. Ms. Bernfeld apparently concluded that Ms. Boyd's claims did not constitute sexual harassment, although she did consider them serious. Ms. Butler and Ms. Bernfeld therefore discussed other available options. Ms. Green arranged for JoAnn Vaught to consult with Mr. Helke and make recommendations on how to improve the situation within the FIP Branch.

In subsequent meetings between Ms. Boyd and Ms. Butler, Ms. Butler remarked that Ms. Boyd would need a waiver from her union before being allowed to change positions due to the freeze on transfers. Ironically, on May 17, 1999, Mr. Helke informed Ms. Boyd that he was moving her office closer to his. Frightened at this prospect, Ms. Boyd called Dan Wiles, Deputy Chief Counsel, and arranged a meeting for May 19, 1999. Mr. Wiles said that he would consider her issues concerning Mr. Helke and her request for a transfer, and that he would stop her office move. In addition, he "advised that he wanted to have an EEO representative look into her allegations." Def.'s Mem. of Pts. & Auths. in Supp. of Mot. for Summ. J. ("Def.'s Mot.") at 7. A couple of days later, Mr. Wiles told Ms. Boyd that he wanted her to stay in the FS Division pending an evaluation by Mr. Helke. Ms. Boyd received her final evaluation on June 9, 1999. Although Ms.

Boyd's ratings in nine of 24 categories were lower than what she had been given in April 1999, Pl.'s Dep. at 125, her overall rating remained the same, "fully successful." On June 11, 1999, Mr. Wiles and Mr. Wilson met with Ms. Boyd and, with the approval of the union, offered to transfer her to another division, Branch 4.

On June 16, 1999, Ms. Boyd delivered to Ms. Butler a rebuttal statement to the June 1999 performance appraisal. Mr. Helke's supervisors then instructed him to prepare a response to her allegations of discrimination and harassment. He allegedly showed the rebuttal statement to several branch attorneys, including Elizabeth Handler.

Ms. Boyd contacted an EEO counselor on July 7 or 8, 1999. On October 22, 1999, she filed a formal administrative complaint with the IRS's EEO office. A final agency decision was issued on May 31, 2001.

## II.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This procedural device is not a "disfavored legal shortcut" but a fair and efficient method of resolving cases expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994).

Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment .... [S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## III.

The IRS moves for summary judgment on Ms. Boyd's claims of a hostile work environment, retaliation, and a violation of the Privacy Act.

## A.

The IRS asserts that Ms. Boyd cannot prevail on her sexual harassment claim because she is time-barred; Mr. Helke's alleged conduct does not rise to the level of a hostile work environment; and the affirmative defense announced in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), applies to defeat this claim. The Court finds these three arguments unpersuasive.

Under 29 C.F.R. § 1614.105(a), an "aggrieved person" must contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory ...." The IRS contends that "there were no ... alleged incidents [with Mr. Helke] after [Ms. Boyd] met with Teri Culbertson on March 5, 1999. [Ms. Boyd] failed to contact an EEO counselor until July 8, 1999, more than 5 months after the last discrete incident." Def.'s Mot. at 10; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("A charge alleging a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). Ms. Boyd does not refute this characterization of events, instead asserting that the

45–day deadline "will be extended when an individual shows that she was not notified of the time limits and was not otherwise aware of them." Pl.'s Opp. at 10 (citing 29 C.F.R. § 1614.105(a)(2)).

■ "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). However, a "court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988).

■ Tolling is appropriate in this situation. "The requirement that an individual contact an EEO counselor within 45 days of the alleged discriminatory incident must be extended when the plaintiff shows that 'he or she was not notified of the time limits and was not otherwise aware of them ....'" *Aceto v. England,* 328 F.Supp.2d 1, 4 (D.D.C.2004) (quoting 29 C.F.R. § 1614.105(a)(2)). Ms. Boyd submitted an affidavit declaring that she was unaware of her obligation to contact an EEO counselor within 45 days of an act of sexual harassment or retaliation. Pl.'s Opp. Ex. 4. Moreover, the IRS has not demonstrated that Ms. Boyd ever attended a training session on EEO procedures or that the agency otherwise adequately informed her of the 45–day limit. The IRS merely points to two websites where Ms. Boyd could have obtained such informa-

tion—provided she knew to look there—and focuses on a belief that she *should* have known about the deadline because she is an experienced trial attorney.[2] The latter only comes into play, if ever, once an employer establishes that it took reasonable steps to notify its workers of the 45–day time limit. *See generally O'Neal v. Johnson,* No. 02–172, 2003 U.S. Dist. LEXIS 13348, at *4–6 (D.D.C. July 17, 2003). There is insufficient evidence in this record to reach that conclusion. In light of Ms. Boyd's affidavit evincing her apparent lack of actual knowledge, the Court deems her EEO filing timely.

■ The next issue is whether a reasonable trier of fact could find that Mr. Helke sexually harassed Ms. Boyd by creating a hostile work environment.[3] "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Savs. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) (citations omitted). A court determines whether a particular environment is "hostile" or "abusive" by examining the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's

2. The IRS emphasizes the fact that Ms. Boyd once represented a plaintiff in a sexual harassment lawsuit in federal court. Ms. Boyd notes, however, that she has no experience as a lawyer with the federal-sector EEO process, which differs from the private-sector EEO exhaustion requirements. *Compare* 29 C.F.R. § 1614.105 *with* 42 U.S.C. § 2000e-5(c).

3. "Two types of sexual harassment are actionable under Title VII: quid pro quo and hostile work environment." *Holbrook v. Reno,* 196 F.3d 255, 262 (D.C.Cir.1999). Ms. Boyd does not allege that Mr. Helke ever asked for a sexual favor in exchange for a professional favor. Pl.'s Dep. at 96.

work performance." *Id.* at 23, 114 S.Ct. 367. This is a rigorous standard, as Congress did not intend Title VII to be a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Indeed, there exists a plethora of socially-unacceptable and uncouth behavior that Title VII was just not meant to cure. "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation omitted).

■ The IRS asserts that Ms. Boyd, as a matter of law, "cannot establish that she was subjected to a hostile work environment prohibited by Title VII." Def.'s Mot. at 13. Assuming that Ms. Boyd can prove all of her allegations at trial, the Court disagrees with this contention. Ms. Boyd attested at her deposition that Mr. Helke "*always* referred to his penis, his crotch. He *always* made some reference about the sexual act. It was second nature to him. He did it *all* the time." Pl.'s Dep. at 51 (emphasis added). She further explained, "He would make [sexual remarks] if you passed him in the hallways. He'd make them in the middle of the bay. He made them in every branch meeting we had." *Id.* at 53. As an example, Ms. Boyd recalled that Mr. Helke allegedly "had a stapler and said, [']Boy, wouldn't this be interesting in a sexual act? Do you think that so-and-so might want to get it on?[']" *Id.* at 51. She characterized him as "the kind of man who walks down the hall ... grabbing his testicles and crotch and rearranging himself while he stares another woman in the face[,]" and noted that she had seen him do this to others. *Id.* at 55. Combined with his apparently overbearing persona and his position of authority as

Ms. Boyd's superior, a reasonable juror could conclude that Mr. Helke's conduct gave rise to a hostile work environment.

■ The *Faragher* affirmative defense does not support summary judgment on this claim. Under *Faragher,* an employer can avoid vicarious liability for "an actionable hostile environment created by a supervisor" if it can prove "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Based on the current record, the Court cannot rule that either of the "two necessary elements" have been fulfilled as a matter of law. *Id.* A reasonable juror could find that the IRS did not promptly take reasonable corrective action and/or that Ms. Boyd took reasonable measures to avoid harassment. First, Ms. Boyd complained to Mr. Wilson, Deputy Assistant Chief Counsel, about Mr. Helke's alleged behavior as early as March 11, 1999. Pl.'s Dep. at 103. Although she admittedly "downplayed ... the actual physical part[,]" she still "told him what had been going on [and] told him about the physical part of it." *Id.* at 104. She also asked for a transfer. The IRS did not offer to remove Ms. Boyd from the allegedly abusive environment—which the Court must assume existed for purposes of the *Faragher* defense—until June 11, 1999. While the IRS may have sound reasons for not acting more quickly, they are not so obvious as to command summary judgment on this issue. Second, there is no evidence that Ms. Boyd was advised of the EEO policy. The IRS argues that "the Chief Counsel enforces a strict anti-harassment policy

... [which] can be found on the IRS intranet website[.]" Def.'s Mot. at 17. However, there is no indication that the agency ever furnished Ms. Boyd with a copy of the policy or directed her to the website.[4] Such actions, of course, are not a requirement under *Faragher* but their absence may inform the reasonableness of Ms. Boyd's response. Prior to talking with Mr. Wilson, Ms. Boyd discussed the alleged sexual harassment with Mr. Putzi, Ms. Shatz, and Ms. Culbertson. She believed that these people were "in management." Pl.'s Dep. at 93. In addition, she apparently requested a transfer from Mr. Helke's branch "orally at least 25, 30 times ... [a]nd in writing probably another ten times." *Id.* at 120. Viewed in a favorable light, a reasonable juror could find that Ms. Boyd acted reasonably in attempting to prevent further harassment.

## B.

■ It is ... unlawful under Title VII "for an employer to discriminate against any of [its] employees ... because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge ... or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To establish a prima facie case of unlawful retaliation, the plaintiff must show: " '1) that [she] engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two." ' *Morgan v. Federal Home Loan Mortgage Corp.*, 356 U.S.App. D.C. 109, 328 F.3d 647, 651 (D.C.Cir.2003) (quoting *Mitchell v. Baldrige*, 245 U.S.App. D.C. 60, 759 F.2d 80, 86 (D.C.Cir.1985)).

*Singletary v. District of Columbia*, 351 F.3d 519, 524 (D.C.Cir.2003).

■ The IRS argues that Ms. Boyd did not suffer an adverse employment action so that this cause of action fails as a matter of law. In response, Ms. Boyd enumerates three actions that she considers to be adverse: her June 1999 performance appraisal, the failure to promote her to a grade 14, step 10 after one year, and the delay in transferring her to another branch. The Court agrees with the IRS that none of these actions forms the basis for a retaliation claim.

With respect to her second evaluation by Mr. Helke, Ms. Boyd "complains of ... the significant lowering of the individual ratings from her interim evaluation in April 1999 ...." Pl.'s Opp. at 19. As the IRS points out, however, her overall rating on the June 1999 performance appraisal was "fully successful," the second-highest available and the same as she received in April 1999. The fact that various categories were rated lower than in her previous evaluation did not cause a "significant change in [her] employment status." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). To the contrary, "since [Ms. Boyd] was serving a one-year probationary period, the 'fully satisfactory' performance appraisal insured that she would acquire tenure in the federal service and be retained with IRS." Def.'s Mot. at 22. "[A] ... thick body of precedent ... refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions" and Ms. Boyd's June 1999 evaluation "was not adverse in an absolute sense." *Brown v. Brody*, 199 F.3d 446, 458 (D.C.Cir.1999).

Mr. Helke's failure to keep his alleged promise to promote Ms. Boyd after one

**4.** Pages 97–98 of Ms. Boyd's deposition do not indicate that Ms. Boyd "was aware of the EEO policy[,]" as asserted by the IRS.

year also was not an adverse employment action. Ms. Boyd does not dispute that "[a]gency procedures for promotion within the attorney series required 104 weeks at the GS–13 level as a prerequisite for promotion to the GS–14 level and only when warranted due to exceptional performance far exceeding the performance typically expected of an attorney at his or her level." Def.'s St. of Mat. Facts Not in Disp. ¶ 7. Nor does she argue that her performance was exceptional. It is therefore irrelevant to this analysis that Mr. Helke (and others) may have *falsely* told Ms. Boyd that she would be promoted more quickly. Because he was not authorized to take such action for 104 weeks, maintaining Ms. Boyd's status at grade 13, step 10 could not have been retaliatory. She would not have been promoted before 104 weeks of employment in any event, given her "fully satisfactory" mid-year rating, which she does not challenge here.

Finally, Ms. Boyd erroneously contends that the IRS's delay in transferring her from the FS Division "was an adverse action because it subjected [her] to several additional months of harassment and intimidation by her supervisor." Pl.'s Opp. at 20. As a general rule:

> [A] plaintiff . . . who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

*Brody*, 199 F.3d at 457. Here, Mr. Wiles actually offered to transfer Ms. Boyd ap-

proximately three months after her request of Mr. Wilson on May 11, 1999. The IRS presents legitimate, non-discriminatory reasons for this delay:[5]

> In order for her to receive an annual performance appraisal at the end of her probationary period, she had to remain in Mr. Helke's Branch. Federal Personnel regulations preclude an extension of the probationary period and require that supervisors supervise an employee for three months before giving them an appraisal. There simply was insufficient time for a new supervisor to evaluate [Ms. Boyd's] performance before the probationary period ended. In addition, due to the agreement with the union, all transfers were frozen, which required the Office of Chief Counsel to obtain permission for her transfer. Once [she] received her performance evaluation and the Office of Chief Counsel received permission from the union, [she] was transferred within days.

Def.'s Mot. at 25 (citations omitted). Although Ms. Boyd questions whether these procedural hurdles really necessitated a delay, she does not proffer evidence that Mr. Wiles, the senior official with the power to transfer her, harbored discriminatory animus or resentment toward her. *See Guerrero v. Univ. of the District of Columbia*, 251 F.Supp.2d 13, 25 (D.D.C.2003) ("[P]laintiff 'must prove both that the defendant's reason is false, and that discrimination was the real reason' for the action taken against her." (quoting *Hastie v. Henderson*, 121 F.Supp.2d 72, 78 (D.D.C. 2000), *aff'd*, 2001 WL 793715, 2001 U.S.App. LEXIS 18022, No. 00–5423 (D.C.Cir. June 28, 2001))). Absent some proof of an illicit motive or intent on the part of Mr. Wiles (who is distinct from Mr.

---

**5.** "Like claims of discrimination, claims of retaliation are governed by the *McDonnell Douglas* burden-shifting scheme." *Carney v.* *Am. Univ.*, 151 F.3d 1090, 1094 (D.C.Cir. 1998).

Helke), a reasonable juror could not conclude that Mr. Wiles was retaliating against Ms. Boyd when he declined to transfer her immediately.

## C.

"Enacted to 'safeguard[ ] the public from unwarranted ... dissemination of personal information contained in agency records,' the Privacy Act generally prohibits 'nonconsensual disclosure of any information that has been retrieved from a protected record,' unless that information falls into one of a number of statutory exceptions[.]" *Doe v. United States Postal Serv.,* 317 F.3d 339, 342 (D.C.Cir.2003) (quoting *Bartel v. FAA,* 725 F.2d 1403, 1407, 1408 (D.C.Cir.1984)). To receive a statutory award under 5 U.S.C. § 552a(g)(4), a plaintiff must prove an intentional or willful violation and actual damages. *Doe v. Chao,* 540 U.S. 614, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004).

 Ms. Boyd claims that Mr. Helke violated the Privacy Act, 5 U.S.C. § 552a(b), "when [he] impermissibly, wilfully and intentionally disclosed [her] rebuttal statement to her June 1999 performance evaluation, a record that was maintained by the agency regarding her employment and contained [her] name." Am. Compl. ¶ 112. She asserts that, "[i]n the report of investigation by the agency EEO office, ... agency attorney Elizabeth Handler notes Helke showed her [Ms. Boyd's] rebuttal to her evaluation and indicated that he could be fired for showing it to her." Pl.'s Opp. at 20. The IRS contends that Mr. Helke was permitted to reveal sections of the rebuttal statement pursuant to the "need to know" exception, which authorizes the disclosure of personnel records to "officers and employees of the agency which maintains the record

who have a need for the record in the performance of their duties[.]" 5 U.S.C. § 552(b)(1). According to the IRS:

> In order to prepare a response to [Ms. Boyd's] allegations for his supervisors, [the Treasury Inspector General for Tax Administration ("TIGTA")] and the EEO counselor, he showed discrete portions of [her] rebuttal to various attorneys named in those sections. Mr. Helke's only purpose in disclosing this information was to ensure that the facts in his response were accurate and that he did not misstate incidents involving those attorneys on issue about which they may have had information.

Def.'s Mot. at 28. The IRS also argues that Ms. Boyd has not established that she sustained actual harm from the disclosure to Ms. Handler, as her "claim of subjective distress loses all credibility when viewed in light of her prior actions." Def.'s Reply at 17.

It is far from clear that Mr. Helke disclosed Ms. Boyd's rebuttal statement for the reason offered by the IRS. During an interview by special agents of the TIGTA, Ms. Handler relayed under oath:

> [In a]pproximately February or March 1999, HELKE called HANDLER into his office, and said, 'I can be fired for what I'm about to show you', [*sic*] and while covering a portion of a report, he than [*sic*] showed her a report containing approximately 42 pages in length .... HANDLER believed that what HELKE was showing her was BOYD's EEO complaint .... HANDLER felt that HELKE was trying to gather her support if there were any investigations conducted as a result of BOYD's allegations against him .... HELKE never told HANDLER how he obtained the report.[6]

address this point, however, and the Court

---

**6.** The time frame given by Ms. Handler occurred before Ms. Boyd submitted her rebuttal statement in June 1999. The IRS does not

Pl.'s Opp. Ex. E. The memorandum containing these statements raises serious questions about whether the IRS may properly rely on the "need to know" exception. It also supports Ms. Boyd's allegation that Mr. Helke "committ[ed] the act without grounds for believing it to be lawful, or ... flagrantly disregard[ed Ms. Boyd's] rights under the Act." *Albright v. United States,* 732 F.2d 181, 189 (D.C.Cir. 1984).

 The Court is unsure how this disclosure caused Ms. Boyd "severe emotional and physical harm, stress, sleeplessness and nightmares" above and beyond any injuries sustained from the alleged sexual harassment. Am. Compl. ¶ 113. However, the Court will allow Ms. Boyd to attempt to prove such "actual damages" at trial and will not enter summary judgment on this claim. *See id.* ¶ 82 (describing Ms. Boyd's alleged emotional trauma).

## IV.

The IRS's motion for summary judgment will be granted in part and denied in part. Judgment will be entered in favor of the IRS on Ms. Boyd's retaliation claim, but her hostile work environment and Privacy Act claims will continue to trial. A separate order accompanies this memorandum opinion.

## ORDER

For the reasons stated in the memorandum opinion that accompanies this order, it is hereby

**ORDERED** that [71] motion for summary judgment is **GRANTED** in part and **DENIED** in part. It is

**FURTHER ORDERED** that JUDGMENT is entered in favor of defendant on

count III (retaliation claim) of the amended complaint.

**SO ORDERED.**

assumes that Ms. Handler merely stated the wrong date. *See* Def.'s Mot. Ex. 5 at 148.