**Lynne G. KING, Plaintiff,**

v.

**GEORGETOWN UNIVERSITY HOSPITAL, Defendant.**

**No. 97–CV–2331 (SS).**

United States District Court, District of Columbia.

June 16, 1998.

Iris McCollum Green, Green & Foushee, Washington, DC, for Plaintiff.

William David Nussbaum, Emily M. Yinger, David Frederick Cutter, Hogan & Hartson, L.L.P., Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This matter comes before the Court on Defendant's Motion for Summary Judgment. Plaintiff filed her complaint on July 18, 1997 claiming that Defendant racially discriminated against her by altering her job responsibilities and transferring her former duties to a non-minority employee in violation of 42 U.S.C. § 1981 and D.C.Code § 1–2501 *et seq.* Plaintiff also claims punitive damages and alleges Defendant intentionally inflicted emotional distress.

### Background

Plaintiff, a black female, holds a B.S. degree in Nursing and is a Board Certified Operating Room Nurse. In August 1995, she was hired by Georgetown University Medical Center's Director of Nursing, Jane Vosloh, as an Assistant Nurse Coordinator (ANC) for the General Operating Rooms. Her salary was approximately $56,000. As one of four ANC's in the Center's Department of Perioperative Services, Plaintiff's responsibilities included supervising seven suite attendants and two control desk clerks. Plaintiff claims that initially she had independent authority to coordinate staff absences, breaks, and operating room assignments but that this authority was later revoked by Ms. Vosloh.

In 1995, Ms. Vosloh became the Director of Perioperative Services at Defendant Hospital. Her previous duties as Nurse Coordinator were collapsed into her new position, and no new designated Nurse Coordinator was hired to replace her. In the summer of 1996, Vosloh decided to eliminate the Assistant Nurse Coordinator position, citing hospital-wide streamlining measures which included the elimination of middle-management positions such as ANC's. Additionally, Defendant stated that because there no longer was a Nurse Coordinator position, it made little sense to retain an Assistant Nurse Coordinator.

As a result of the restructuring, Plaintiff was offered a choice of one of four Senior Nurse Specialist (SNS) positions. Each of the positions carried the same salary, grade, and benefits as the previous ANC position. In her new position, Plaintiff supervised seven to ten people, including six nurses. Plaintiff concedes that the nurses she oversaw as an SNS were higher level employees than the suite attendants she oversaw as an ANC. Following the restructuring, several of Plaintiff's former ministerial scheduling duties were performed by Senior Nurses (including Plaintiff) on a rotating basis. All Senior Nurse Specialists other than Plaintiff were white.

Ms. Vosloh left Georgetown University Hospital in March 1997. Shortly thereafter, several Senior Nurse Specialists resigned. In June 1997, Nancy Cressy, interim Nursing Coordinator, asked Scott Stone, a white male staff nurse, to assume sole responsibility for ministerial scheduling duties, such as assigning lunch breaks and overtime. In his affidavit, Mr. Stone stated that he was not responsible for scheduling cases. Mr. Stone accepted this position, which carried an annual salary of approximately $45,000. Approximately one year after Mr. Stone's appointment, Plaintiff resigned from Georgetown University Hospital.

### Summary Judgment Standards

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mere allegations or denials of the adverse party's pleadings are insufficient to prevent summary judgment. The party adverse to summary judgment must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The Supreme Court laid out the standards for issuance of summary judgment in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex,* the Court recognized the need for summary judgment motions to the fair and efficient functioning of the justice system. The Court stated that "summary judgment is … not … a disfavored procedural shortcut, but … an integral part of the Federal Rules as a whole." *Id.* at 327. When considering a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact. *See Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993).

### Analysis

Summarizing the relevant case law, this Court finds that Plaintiff must establish four facts in order to establish a prima facie case of racial discrimination: 1) that she belongs to a racial minority, 2) that she was qualified for the job, 3) that she suffered an adverse employment action by failing to obtain a position, being discharged or demoted from a position, or otherwise unfairly treated in a material way in a workplace matter, and 4) that a similarly-situated employee who does not belong to a protected group was given preferential treatment with respect to the employment action. Plaintiffs claim clearly survives the first two criteria: she is black, and her qualifications for the job are unquestioned. At issue is whether the Plaintiff has adequately shown that she suffered an adverse employment action when she was transferred from the ANC position to the SNS position and whether a similarly-situated non-minority employee was assigned Plaintiffs prior duties.

In order to make out a prima facie case of discrimination, Plaintiff must show that she suffered adverse employment action. *See Benn v. Unisys Corp.,* 176 F.R.D. 2, 9 (D.D.C.1997). Plaintiff admits that although her responsibilities were altered, her salary, benefits, and job grade remained the same. While Plaintiff contends that her scheduling duties were transferred to another employee, she does not refute Defendant's argument that in fact her job responsibilities were enlarged because as an SNS, Plaintiff

had oversight over higher-level employees. Even if this Court were to accept Plaintiffs claims that her responsibilities were diminished, it is unclear that this alone constitutes adverse employment action. Plaintiff alleges that the job reassignment diminished her chances of becoming the Nursing Coordinator. Without further corroborating evidence, the unsubstantiated allegation that Plaintiffs reassignment might have cost her future salary increases is too speculative to constitute a cognizable adverse employment action.

■ Plaintiff also fails to show that a similarly situated non-minority employee was given her position. *See Slaughter v. Howard University*, 971 F.Supp. 613, 614 (D.D.C. 1997) (holding that a prima facie case of discrimination requires that a "similarly situated" employee be identified as a comparator). Defendant argues that no "similarly situated" employee was identified by Plaintiff, and thus she cannot meet her prima facie burdens. In her reply to Defendant's Motion for Summary Judgment, Plaintiff fails to adequately respond to this argument. The fact that Plaintiffs responsibilities were altered and that a white male nurse took over some of her former ministerial duties such as scheduling lunch breaks and overtime does not mean that he was "similarly situated." The male nurse never assumed the title of Assistant Nurse Coordinator, nor did he assume her supervisory duties. At most, the nurse took over Plaintiffs ministerial scheduling duties, such as assigning breaks and lunch schedules. Because uncontradicted testimony indicates that the white male nurse's salary and rank were significantly lower than Plaintiffs, this Court does not find Plaintiff and he to have been "similarly situated." This Court therefore finds that Plaintiff fails to establish a prima facie case of discrimination.

■ However, even if this Court were to find that Plaintiff had made out a prima facie case, Defendant had legitimate nondiscriminatory reasons for altering Plaintiff's job responsibilities. Plaintiffs transfer was part of a hospital-wide plan designed to promote efficiency and improve patient care. Absent a "demonstrably discriminatory motive," a court may not "second-guess an employer's

personnel decision." *Fischbach v. District of Columbia Dep't of Corrections*, 86 F.3d 1180 (D.C.Cir.1996), citing *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C.Cir.1982). Moreover, Plaintiff's claim that Ms. Volsoh treated her in a discriminatory fashion is undermined by the fact that it was Ms. Volsoh who originally hired her. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 513 (4th Cir.), *cert. denied*, 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994) (holding that "employers who knowingly hire workers within a protected group seldom will be credible targets for charges of a pretextual firing.")

Plaintiff fails to show that Defendant acted with discriminatory intent. Plaintiff's allegation that one of Defendant's nurses called her a "witch," while caustic, does not rise to the level of prohibited racial discrimination. Moreover, the supporting affidavit of Mr. Cornelius Williams, Certified Surgical Technician, submitted by Plaintiff merely alleges that the decision to alter her job responsibilities was made by a group of white nurses but fails to dispute the fact that Defendant had a valid reason for the change.

■ Moving to the tort issue, this Court finds that the Plaintiffs claim of intentional infliction of emotional distress also must fail. The lack of a prima facie case of discrimination seriously undermines the validity of the tort claim. While Defendant may have treated the transfer of Plaintiff from ANC to SNS somewhat clumsily, nothing in the record indicates the requisite outrageous conduct or severe emotional distress required to survive summary judgment. For the same reasons, there are no grounds justifying punitive damages.

This is another example where the nation's anti-discrimination laws are being misused. Here a U.S. district court is asked to involve itself in a minor internal employee assignment decision. The Plaintiff can show no monetary loss. A simple internal restructuring in the workplace is the basis of Plaintiff's claim. Certainly management must have some freedom from a federal lawsuit in implementing a reorganization plan. The mislaid basis of her cause of action is demonstrated by Plaintiff's counsel's response to

the Court question as to the extent of Plaintiff's damage. The colloquy between the Court and Plaintiff's attorney went as follows:

> THE COURT: Now, what would you want? You want her reinstated?

> COUNSEL: She doesn't want reinstatement. She wants money damages, Your Honor.

> THE COURT: Well, what kind of damages did she have?

> COUNSEL: Well, she lost, in her view, prestige, job responsibility and authority, . . .

> .     .     .     .

> THE COURT: Well, you say she has damages. What are her damages?

> COUNSEL: She claims she lost prestige—

> THE COURT: I know. But what's the dollar value on prestige? How much money can give for—I mean, I'm just trying to find out how much money I can give her for her loss of prestige?

> COUNSEL: She'd like a million dollars, but, of course, she'd like—

> THE COURT: A million dollars for loss of prestige?

It would be hoped that at some point Congress would review the law in this area and make the necessary adjustments to eliminate these meritless, lottery-type cases.

Accordingly, it is

**ORDERED** that Defendant's Motion is **GRANTED** and the case is **DISMISSED** with prejudice.