**Victoria GUERRERO, Plaintiff,**

v.

**THE UNIVERSITY OF THE DISTRICT OF COLUMBIA, et al. Defendants.**

**No. CIV.A. 01–1560(RBW).**

United States District Court, District of Columbia.

Feb. 10, 2003.

---

4. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

14

Mayda Colon Tsaknis, Colon Tsaknis &
Associates, Rockville, MD, Counsel for
Plaintiff.

Robin C. Alexander, University of the District of Columbia School of Law, Washington, Counsel for University Defendants.

### *AMENDED MEMORANDUM OPINION*

WALTON, District Judge.

This employment discrimination case presents a host of issues for the Court to resolve. After wading through the arguments amassed by both parties, the Court concludes that plaintiff has failed to establish actionable claims under either Title VII of the Civil Rights Act of 1964 or 42 U.S.C. § 1983 (2000). Therefore the defendants Board of Trustees [1] are entitled

---

1. The defendants in this matter, who refer to themselves as the "University defendants," include the Board of Trustees of the University of the District of Columbia and defendant Rachel Petty, former Dean of the College of Arts and Sciences. University Defendants' Motion to Dismiss the Amended Complaint, or in the Alternative, for Summary Judgment ("Defs.' Mot.") at 1. There are several other named defendants in plaintiff's complaint, who are sued in both their official and individual capacities, and who have not yet filed responses to plaintiff's amended complaint.

2. There was a dispute between the parties as to whether the Court should accept the complaint filed by plaintiff on July 30, 2002, as her amended complaint or whether her pleading that was filed November 20, 2001, is the amended complaint that is properly before the Court. The confusion stems from plaintiff's attempt, on October 17, 2001, to file an amended complaint without permission from the Court or the defendant's consent. Judge Friedman, the presiding judge at that time, ordered the Clerk of the Court to remove plaintiff's amended complaint from the Court file and directed plaintiff to file her amended complaint in accordance with Federal Rule of Civil Procedure 15(a). Plaintiff subsequently filed a consent motion to amend her complaint on November 13, 2001, and an amended complaint was filed and date stamped by the Clerk's office November 20, 2001. While the foregoing events were in progress, this matter had been assigned to this judge on November 6, 2001. At a status hearing held on June 6, 2002, this judge granted plaintiff's

---

to dismissal of certain claims pled by plaintiff in her complaint and summary judgment as to plaintiff's remaining claims. However, defendant Rachel Petty is not entitled to dismissal of the complaint as to those claims asserted against her.

### I. Background

Plaintiff Victoria Guerrero is a 57 year old female of Filipino descent. Plaintiff's Amended Complaint ("Compl.") ¶ 5.[2] Ms. Guerrero was hired by the Washington Institute of Technology ("WIT"), a predecessor institution to the University of the District of Columbia ("UDC"), on February 4, 1974, as an adjunct professor.[3]

---

consent motion to amend her complaint and dismissed as moot the motion for summary judgment that had been filed by the defendants and was addressed solely to the original complaint. At that hearing, the Court also issued a scheduling order that designated a date for the filing of dispositive motions that would address the claims that had been raised in the amended complaint. The University defendants filed their motion to dismiss the amended complaint on May 31, 2002. That motion was directed to plaintiff's earlier amended complaint, date stamped November 20, 2001. On July 30, 2002, plaintiff filed her later amended complaint and on August 2, 2002, she filed an opposition to defendant's motion that seeks dismissal, or alternatively, summary judgment. In her opposition, plaintiff stated that the defendants' motion to dismiss or for summary judgment was applicable to the amended complaint filed on July 30, 2002. On August 12, 2002, defendants filed a motion to strike the amended complaint dated July 30, 2002; plaintiff opposed this motion. However, on August 16, 2002, defendants filed their reply in support of their dismissal/summary judgment motion and, on September 9, 2002, filed an answer addressed to the amended complaint filed on July 30, 2002. As a result of these events, the Court will treat the July 30, 2002, amended complaint as the pleading that is properly filed as the amended complaint and will deny the defendants' motion to strike the amended complaint.

3. In her complaint, plaintiff alleges that she began her employment with WIT as an ad-

Plaintiff's Opposition to the Defendants' Motion to Dismiss Amended Complaint or in the Alternative for Summary Judgment ("Pl.'s Opp."), Exhibit ("Ex.") 1 (Personnel Action form). She was later hired as a full-time professor in September 1975. Compl. ¶ 5; Pl.'s Opp. Ex. 2. The present controversy all began in 1997 when UDC was required to conduct a Reduction in Force ("RIF") due to a financial crisis. Compl. ¶ 14. Plaintiff retained her position at that time because it was determined that she was "critical" to the Department of Biological and Environmental Sciences program, even though her retention violated a provision of the University's collective bargaining agreement. *Id.* The UDC Faculty Association challenged the procedures utilized in the RIF and in *University of the District of Columbia Faculty Assoc. v. District of Columbia Financial Responsibility and Mgmt. Assistance Auth.*, 163 F.3d 616 (D.C.Cir.1998), the Circuit Court ruled that the Control Board, which was created pursuant to the District of Columbia Financial Responsibility and Management Assistance Act of 1995, acted beyond the authority granted by Congress when it authorized UDC to reduce its faculty " 'notwithstanding the provisions of any collective bargaining agreement.' " *Id.* at 618. While that case

was on remand, the parties "negotiated a resolution of all remedial issues which resulted in a phased 'correction' of the 1997 RIF to make it consistent with the requirements of the collective bargaining agreement ('CBA')." University Defendants' Motion to Dismiss the Amended Complaint, or in the Alternative, for Summary Judgment ("Defs.' Mot.") at 6.

As result of the foregoing events, in 1999 UDC conducted a corrective RIF. Because Dr. Guerrero had been illegally retained in light of her seniority status in 1997 when four faculty members who were more senior than her were released, one whom was subsequently offered and accepted reinstatement, Dr. Guerrero had to be released. Defs.' Mot., Affidavit of James Preer, UDC faculty member and former Associate Provost, dated May 28, 2002, ("Preer Aff.") ¶ 8. Thus, in a letter dated July 15, 1999, plaintiff was informed by defendant Beverly J. Anderson, Acting Provost and Vice President for Academic Affairs, that plaintiff had been "one of the persons retained out of seniority order in contravention of the reduction in force provisions of the collective bargaining agreement ..." and therefore would be terminated "effective August 15, 1999." Defs.' Mot. Ex. 4, Letter to Dr. Victoria Guerrero from Beverly J. Anderson dated July

junct professor in February, 1975. Compl. ¶ 5. However, in her opposition to defendants' motion to dismiss or for summary judgment, plaintiff asserts that she was first hired as an adjunct professor in the Spring of 1974. Pl.'s Opp. at 3. Plaintiff asserts that defendants have erroneously relied on the September, 1975 date as the date from which her seniority should be calculated, even though she cited this date in her complaint. *Id.* at 3–4. According to her complaint, plaintiff became a full time professor on September 15, 1975, although her personnel form states that she acquired full time status on September 16, 1975. Compl. ¶ 5; Pl.'s Opp. Ex. 2. In her affidavit, plaintiff asserts that on July 31, 2002, "while looking in a box of old documents" she learned that her "actual date of

entry at Washington Technical Institute was February 1974." Pl.'s Opp, Ex. 13, Plaintiff's Affidavit ("Pl.'s Aff.") ¶ 4. However, according to the collective bargaining agreement, for purposes of a Reduction in Force ("RIF"), the "date of employment is defined as the initial date of continuous employment as regular full-time faculty with the University or its predecessor institutions." University Defendants' Motion to Dismiss the Amended Complaint, or in the Alternative, for Summary Judgment ("Defs.' Mot."), Ex. 8, Fourth Master Agreement between UDC and the UDC Faculty Association/NEA at 54. Therefore, it appears defendants were not incorrect in using the September 1975 date, as that is the date when plaintiff became a full-time faculty member.

15, 1999. At the time she received notice of the corrective RIF plaintiff was "a tenured full time professor in the Department of Biological and Environmental Sciences ..." Compl. ¶ 5. Plaintiff received a second letter from defendant Anderson dated July 21, 1999, stating that plaintiff could appeal the corrective RIF action by filing an appeal with defendant Julius F. Nimmons, Jr., the President of UDC, by no later than August 6, 1999. *Id.* Plaintiff timely filed an appeal and received a response from defendant Nimmons on July 11, 2000, wherein she was informed that her appeal was denied and that defendant Nimmons' final decision could be appealed to the Superior Court of the District of Columbia pursuant to the Agency Review Rules. Defs.' Mot., Ex. 5, Letter to Dr. Victoria C. Guerrero from Julius F. Nimmons dated July 11, 2000. At the same time she filed her appeal with defendant Nimmons, plaintiff filed a grievance with the University challenging the corrective RIF, the University's failure to pay her for her professional units ("PUs")[4] and its alleged unfair labor practices. *Id.* ¶ 15. Plaintiff also alleged that defendants Anderson and James Preer, Assistant to the Provost, continued to assign her tasks, despite the fact that they knew she was being RIF"ed. *Id.*

Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 2, 2000. *Id.* ¶ 26. In count one of her amended complaint that was filed with this Court, plaintiff alleges that defendants have violated Title VII of the Civil Rights Act of 1964 by discriminating against her because of her national origin and race by not hiring her for positions for which she was qualified, but instead hiring black and other non-Filipinos who were less qualified than her, *id.* ¶ 34; by "failing to recall her after the 1999 RIF while [b]lacks and non-Filipinos that were RIFed in her College [ (the College of Arts and Sciences) ] have been recalled[,]" *id.* ¶ 35; by transferring blacks to positions for which plaintiff is better qualified, *id.* ¶ 36; and by failing to pay plaintiff for her PUs and withholding the check for her transportation expenses while blacks and non-Filipinos "are compensated for similar or equal work and do not have their expenses check[s] withheld." *Id.* ¶ 37. Count two of plaintiff's amended complaint alleges that she was unlawfully retaliated against by defendants for filing a charge of employment discrimination and that the retaliation occurred when defendants failed to recall her from the 1999 RIF although all other faculty members in her college have been recalled, failed to give plaintiff a position for which she was qualified, and failed to pay plaintiff for all of her PUs. *Id.* ¶¶ 38–41. Finally, in count three of her amended complaint plaintiff alleges that she was denied due process when she was denied re-employment and thus defendants have violated 42 U.S.C. §§ 1981, 1983 and 1985. *Id.* ¶¶ 2, 42–46.[5]

---

4. "PUs are units of calculation of work value for faculty. Faculty can trade overload PUs for release time or for pay in a subsequent semester." Defs.' Mot., Affidavit of James Preer ("Preer Aff."), UDC faculty member, dated May 28, 2002 ¶ 5.

5. Plaintiff makes a host of additional allegations against the current and individually named defendants, including the fact that she was denied approval of a grant proposal "to insure that plaintiff was not retained because of her [n]ational [o]rigin, Filipino and her race[,]" and the fact that she was asked to perform assignments after receiving notice of her termination and that she performed these assignments "because she was made to believe that she would be recalled." Compl. ¶ 10, 16. However, the Court will only address those arguments pertinent to the substantive claims plaintiff makes in her complaint that are directed to the University defendants as only those defendants have filed the current dispositive motion before the Court.

The "University defendants" have filed a motion to dismiss the complaint or, in the alternative, for a grant of summary judgment. Defendants first argue that this Court lacks subject matter jurisdiction over plaintiff's claims as the rights she seeks to enforce stem from the Fourth Master Agreement between UDC and the UDC Faculty Association. Defs.' Mot. at 3. Thus, the University defendants contend that plaintiff's exclusive remedy is to file an appeal pursuant to the procedures set forth in the CBA as prescribed by the District of Columbia Comprehensive Merit Personnel Act ("CMPA"), or as provided by the UDC Board of Trustees official rules and she has failed to exhaust those administrative remedies. *Id.* Next, defendants argue that they are entitled to dismissal of plaintiff's section 1983 claims because of her failure to allege a policy or custom that resulted in her injuries. *Id.* at 9–10. Defendants also argue they are entitled to summary judgment on plaintiff's Title VII claims because she cannot prove that she has suffered an adverse action or that similarly situated employees were treated more favorably than she was.[6] *Id.* at 14. Finally, defendants note that service on defendant Rachel Petty was inadequate, and therefore the Court should dismiss the complaint against her. The Court will first address defendants' contention that plaintiff has failed to exhaust her administrative remedies and will thereafter address the merits of plaintiff's claims that survive the defendants' exhaustion challenge.

---

**6.** Defendants appear to argue that this Court lacks subject matter jurisdiction over the amended complaint because, pursuant to 28 U.S.C. § 1343, in order for jurisdiction to reside with this Court, plaintiff must "show that [d]efendants' conduct violated a federally secured right and raises a federal question." Defs.' Mot. at 9. Defendants argue that plain-

## II. Analysis

### A. *Exhaustion of Administrative Remedies*

Defendants make two primary arguments pertaining to plaintiff's exhaustion of her administrative remedies. Defendants first argue that plaintiff has not properly appealed defendant Nimmon's denial of her appeal regarding the decision to terminate her. Defs.' Mot. at 16. Second, defendants argue that plaintiff's EEOC complaint was not timely filed. *Id.* at 17–18. The Court will address each of these contentions in turn.

#### 1. *Appeal of the RIF decision*

Defendants concede that plaintiff timely filed her internal RIF appeal with President Nimmons. Defs.' Mot. at 16. However, after that appeal was denied on July 11, 2000, defendants argue that plaintiff's next move, as advised in defendant Nimmons' letter, which referenced the RIF rules and Superior Court Agency Review Rule 1, should have been an appeal to the Superior Court for the District of Columbia. *Id.* Plaintiff does not address her failure to appeal to the Superior Court, but argues that defendant Nimmons at some point informed her, contrary to the procedure outlined in the letter notifying her of the decision to terminate her, that the termination decision would not be final until a written decision was issued. Pl.'s Opp. at 6. In his July 11, 2000, letter, defendant Nimmons stated, in part:

> I am sorry that your exemplary career with the University has ended so un-

tiff cannot make such a showing. However, this argument is directed to the merits of plaintiff's section 1983 and Title VII claims. As such, this Court is vested with jurisdiction to determine whether or not plaintiff's claims are sufficient to assert claims under those statutory provisions or not.

happily. Your request for review presents no violation of the provisions of RIF Procedures or any other basis for finding that the reduction in force action is unlawful or improper. Therefore your appeal is denied. *This final agency decision may be appealed to the Superior Court of the District of Columbia under the Agency Review Rules.* A copy of these rules is enclosed.

Pl.'s Opp. Ex. 4 (emphasis added).

Reading plaintiff's complaint in the light most favorable to her and accepting as true all factual allegations contained in the complaint, as the Court is required to do, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Court finds that plaintiff's complaint should not be dismissed for her failure to appeal defendant Nimmons' decision to the Superior Court. This is so because plaintiff's claims here are, as she argues, not based upon the decision to terminate her, which both parties acknowledge was the result of the legitimate corrective action needed to remedy the improper RIF in 1997, but the defendants' failure to re-hire her and in allegedly appointing other persons to positions for which plaintiff claims she was better qualified. Thus, as her complaint filed with defendant Nimmons did not address the failure to re-hire her, the Court concludes that plaintiff's failure to appeal defendant Nimmons' decision does not preclude her from seeking relief in this Court. Nor was plaintiff required to raise the re-hire issue with defendant Nimmons. This is because UDC Resolution Number 99–16, which ad-

dresses the correction of the 1997 RIF, also provides:

The decision of the President shall be the final agency decision on the *reduction-in-force.* Faculty members whose appeals to the President are denied will have thirty (30) calendar days to file petitions for review in the Superior Court of the District of Columbia pursuant to Superior Court Agency Review Rule 1.

Defs.' Mot. Ex. 2 ¶ 9 (emphasis added). The Resolution does not require that any claims of discriminatory treatment pertaining to UDC's action in re-hiring employees be submitted to the president. Plaintiff is not, and could not, challenge the RIF procedures in this Court; the Resolution required that redress be sought in the Superior Court. However, as her claim is based upon the defendants' discriminatory practices in not re-hiring her, these claims are properly before the Court as further discussed below.[7]

### 2. *Filing of Plaintiff's EEOC Complaint*

Next defendants argue that plaintiff's EEOC complaint that was filed on October 2, 2000, was untimely because it was filed more than 300 days after she was RIF'ed and had applied for other positions. Defs.' Mot. at 17–18. Plaintiff alleges her EEOC complaint was filed timely as it was filed within 95 days of the date defendant Nimmons rendered his decision. Pl.'s Opp. at 6. In any event, plaintiff argues that her EEOC complaint does not allege that the RIF procedure was discriminatory, but

7. The Court notes that the CMPA does not bar plaintiff's claims as it "expressly exclude[s] from the employee grievance procedures any allegations within the jurisdiction of the D.C. Office of Human Rights.... As a result, an employee seeking relief for discrimination must pursue remedies provided under the District of Columbia Human Rights Act rather

than the CMPA." *Robinson v. District of Columbia,* 748 A.2d 409, 411 (D.C.2000). In addition, it has been held that the filing of a complaint with the EEOC satisfies the exhaustion of remedies requirement of the D.C. Human Rights Act. *Fowler v. District of Columbia,* 122 F.Supp.2d 37, 43 (D.D.C.2000).

rather "[d]efendant's failure to reinstate her is discriminatory." *Id.* at 14.

Whether or not plaintiff filed her claim timely is governed by Title VII. Defendant inexplicably argues that plaintiff had 300 days from the date of the alleged discriminatory event to file her administrative complaint with the EEOC and plaintiff does not take exception with this position. However, pursuant to Title VII, 42 U.S.C. § 2000e–5(e)(1) (2000), "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ..."; *see also Washington v. Washington Metro. Area Transit Auth.,* 160 F.3d 750, 752 (D.C.Cir.1998) (before initiating a Title VII lawsuit, "an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident.") (citations omitted).[8] Accordingly, the 180 day limitation period controls whether the two Title VII claims were timely filed.

Plaintiff maintains that her complaint is based upon the decision not to reinstate her and the actions of the defendants in appointing persons less qualified than she was to positions she applied for or was qualified to perform. If, as plaintiff claims, her complaint is based upon the defendants' failure to reinstate her, her reliance on defendant Nimmons' letter (which she concededly failed to timely appeal to the Superior Court for the District of Columbia) is not the appropriate point from which to calculate the time for filing her EEOC complaint. Rather, the proper time for filing her complaint would have been within 180 days after the time she first applied for and was denied a position with the University for which she was allegedly qualified.

According to plaintiff's amended complaint, she applied for the position of Chairperson of the Department of Biological and Environmental Sciences on August 11, 1999. Compl. ¶ 21. Plaintiff states that "[a]t a later date [she] found out" that the position had been given to Dr. Freddie Dixon, a black female who was less experienced than plaintiff. *Id.* Plaintiff does not state when she learned of this action and therefore, even though she did not file her EEOC complaint until October 2, 2000, the Court cannot conclude this claim would be time-barred in the absence of information proving when plaintiff actually learned that the position was given to another person.

Plaintiff also alleges in her complaint that a position for Senior Project Specialist was announced on July 31, 2001, and that

**8.** Title VII does permit the filing of an administrative complaint with the EEOC within 300 days after the alleged unlawful employment action occurred in the case of a person who has been aggrieved and has "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto ..." *Id.* No such proceedings were instituted in this case. The 300–day period is designed to permit plaintiffs residing in states that have state agencies empowered to address claims of discrimination to fully avail themselves of the state procedures. *See, e.g., Currier v. Radio Free Europe/Radio Liberty, Inc.,* 159 F.3d 1363, 1366 n. 2 (D.C.Cir.1998) (appellant who did not institute proceedings with the District of Columbia Office of Human Rights was required to file EEOC charge within 180 days of the alleged unlawful employment practice); *Watson v. Eastman Kodak Co.,* 235 F.3d 851, 854 (3d Cir.2000) ("plaintiffs residing in states having an agency authorized to grant relief for federally prohibited employment discrimination must resort to that state remedy before they will be allowed access to federal judicial relief ... [;s]uch states are termed 'deferral states.' ... Title VII ... plaintiffs ... who file in deferral states, must submit their administrative discrimination charge within 300 days of the challenged employment action.") (citations omitted).

the position was given to Linda Carmichael, another black female who plaintiff asserts is less qualified and junior to plaintiff in seniority, although it is not clear that plaintiff actually applied for this position.[9] *Id.* ¶ 30. Therefore, it appears plaintiff did not timely file a complaint pertaining to the 1999 position vacancy, and she appears to not have complained regarding the 2001 position vacancy because her EEOC complaint was filed prior to the time when this position was announced.[10]

▇▇▇ However, "[i]n construing and applying [Title VII's] procedural specifications and limits, courts should be mindful of the judiciary's crucial role in the [Title VII] statutory enforcement design." *Loe v. Heckler*, 768 F.2d 409, 417 (D.C.Cir. 1985) (citing *Brown v. General Services Admin.*, 425 U.S. 820, 825–26, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)). Therefore, the Court must avoid applying Title VII's procedural requirements in an "overly technical [manner that] would improperly impede the goal of making federal employment free from proscribed discrimination." *Id.* (citation omitted). The Court concludes that dismissal is not warranted because defendants have failed to prove that plaintiff's claim regarding the 1999 position vacancy is time barred in the absence of evidence showing the date on which plaintiff learned that she was denied the position. In addition, the Court finds that the

defendants were on notice of plaintiff's discrimination claims at the time they did not offer her the 2001 position since she had filed her EEOC complaint in 2000. Thus it appears that plaintiff's complaint, although technically premature, was adequate to give the "agency notice of a claim and [the] opportunity to handle it internally[,]" which is the purpose of the exhaustion doctrine. *Brown v. Marsh*, 777 F.2d 8, 15 (D.C.Cir.1985). Therefore, the Court finds that these claims should not be dismissed on exhaustion grounds.

**B.**  ***The Substantive Challenge to Plaintiff's Section 1983 Claims***

Defendant seeks dismissal of plaintiff's section 1983 claims because "[p]laintiff fails to allege a custom or policy of the District of Columbia or UDC which directly caused [p]laintiff's asserted injuries." Defs.' Mot. at 9. Although plaintiff, in her opposition, points to portions of her complaint that meet this standard regarding her Title VII discrimination claims, she does not point to any allegation that would suffice to sustain her section 1983 claim.

To survive a motion to dismiss, a complaint need only provide " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citing

---

**9.** Although plaintiff specifically stated that she "formally applied for the position of Chairperson of the Department of Biological and Environmental Sciences by sending [a] request to Defendant Nimmons as well as to Defendant Petty[,]" she makes no such assertion regarding the 2001 position. Regarding the 2001 position, plaintiff merely states that the position "was announced" and that plaintiff was "not offered this position . . ." Compl. ¶¶ 20, 30. Nowhere in either her opposition, statement of material facts as to which there exists a genuine issue, or her affidavit does plaintiff contend that she actually applied for the position that was announced in 2001.

**10.** Plaintiff has not alleged that the defendants' actions in not reinstating her constituted a continuing violation. A continuing violation exists "[w]here the discriminatory practice is continuing in nature." *Gary v. Washington Metro. Area Transit Auth.*, 886 F.Supp. 78, 89 (D.D.C.1995). In cases of continuing discriminatory violations, "the required time periods for filing administrative complaints should run 'from the last occurrence of the discrimination and not from the first occurrence.' " *Id.* (citing 118 Cong. Rec. 7167 (1972) (conference report)).

Fed.R.Civ.P. 8(a)). And, when reviewing a motion to dismiss, the court must accept as true all the factual allegations contained in the complaint. *Leatherman*, 507 U.S. at 164, 113 S.Ct. 1160. A motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which she is entitled to relief. *Woodruff v. DiMario*, 197 F.R.D. 191, 193 (D.D.C.2000). Thus, a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99.

42 U.S.C. § 1983 provides, in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Plaintiff argues that as a tenured professor, she had a "vested property right or interest [in her continued employment] which is protected by the due process clause of the United States Constitution." Compl. ¶ 43. Plaintiff states that the decision notifying her on July 15, 1999, that she was being RIF"ed as of August 16, 1999, deprived her of due process. *Id.* Plaintiff alleges defendants acted under "color of State law to deprive [p]laintiff of

said right ..." and that "Blacks and non-Filipinos were transferred, retained and/or hired for positions for which [p]laintiff qualified and had more seniority, but for her national origin-Filipino or her race, [and][p]laintiff was left without employment." *Id.* ¶¶ 44–45.

■ Without deciding whether these allegations sufficiently allege a custom or policy, the Court finds another defect in plaintiff's complaint. As plaintiff's continued employment with UDC was terminated because of a RIF, and not for cause, "it is by no means obvious that a property interest in continued employment is even implicated here." *American Federation of Gov't Employees v. Office of Personnel Mgmt.*, 821 F.2d 761, 768 (D.C.Cir.1987); *Davis v. University of the District of Columbia*, 603 A.2d 849, 853 (D.C.1992) (same). Assuming, however, that plaintiff's RIF did implicate a property right, there was no denial of due process in this case because plaintiff was provided with a thirty day notice of her termination and was afforded an administrative process through which she could raise any challenges to the decision before her termination became effective, coupled with a judicial appeal to the local trial court. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("The essential requirements of due process ... are notice and an opportunity to respond."); *Davis*, 603 A.2d at 853 (holding that plaintiff, a UDC professor who was terminated in a RIF, was not denied due process "because, prior to the RIF, he was given notice and opportunity to be heard.") (citation omitted). Indeed, plaintiff pursued her procedural right to appeal the decision to President Nimmons, but declined to pursue her challenge further by appealing to the Superior Court for the District of Columbia as she was advised she could do in defendant Nimmons' letter.[11] *See Cleveland Bd. of*

---

11. Plaintiff's section 1983 claim once again raises the issue of whether she properly ex-

*Educ.,* 470 U.S. at 547–48, 105 S.Ct. 1487 ("[w]e conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures ..."). Therefore, the Court concludes that plaintiff's section 1983 claims must be dismissed.[12]

## C. *The Substantive Challenge to Plaintiff's Title VII Claims*

Next, defendants argue that they are entitled to summary judgment on plaintiff's Title VII claims because plaintiff cannot demonstrate that the RIF was an adverse action and because she cannot show that similarly situated employees were not subjected to the same action by the employer. Defs.' Mot. at 13–14.

Summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, the Court must review the facts in the light most favorable to plaintiff as the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of "*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505. Summary judgment is mandated if a plaintiff fails to establish an element essential to that party's case and on which that party will have the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

### (1) Plaintiff's Disparate Treatment Claim

▪ Defendants argue that plaintiff cannot sustain her Title VII disparate treatment claim because she can not establish a *prima facie* case of discrimination. In the absence of proof of direct discrimination, which has not been presented in this case, plaintiff must prevail under the burden-shifting test enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of disparate impact treatment discrimination as to the Title VII claims that remain alive, plaintiff must establish that "(1) [she] is a member of a protected class; (2)[she] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody,* 199 F.3d 446, 452 (D.C.Cir.1999).

▪ Regarding her disparate treatment claim, the Court agrees with defendants' position that plaintiff has failed to establish that a similarly situated employee, that is, a professor who taught in her discipline of biological and environmental sciences and who was outside of her protected class, was reinstated despite the

---

hausted her administrative remedies. Because her section 1983 claim is based upon her "vested property right in continued employment" and alleges she was denied due process pertaining to the notice she received of the RIF, it is clear that she is challenging the procedures utilized in the RIF and not the

failure of the defendants to re-hire her for an available position.

12. The Court's resolution of plaintiff's Section 1983 claims also dispose of her claims brought pursuant to Sections 1981 and 1985, as those claims were predicated upon the same arguments.

fact that plaintiff was more senior than such a person. Accordingly, her claims of discrimination must fail. A review of plaintiff's following allegations reveal this deficiency: Linda Carmichael, a black female who plaintiff asserts is less qualified and junior to plaintiff, was given the position of Senior Project Specialist in the Agricultural Experiment Station Community Outreach and Extension Services. Compl. ¶ 30. Defendant Nimmons, who was formerly the president of UDC, has been hired as a professor [13] and defendant Vernon Clark has been hired as a professor in the College of Education. *Id.* ¶ 18. Professor Prema Ganganna, a Southern Indian female who was hired November 1, 1988, was retained because she was critical to the Nutrition program and had already been employed in the discipline of Nutrition and Food Science. *Id.* ¶ 29; Defs.' Mot. at 14. Associate Professor Doris Johnson, a black female with a degree in psychology, who was hired by UDC on September 3, 1977, was assigned to the Institute of Urban Policy. *Id.* Dr. Sekhon, a black male, "was in Nutrition prior to being RIF'ed but in order not to bump Dr. Ganganna, was given a position in Biology." Pl.'s Opp. at 13. And finally, Dr. Wyche–Moore, a black female who was RIF"ed in 1997 "and immediately recalled as Director of the Agricultural Experiment Station." *Id.* As is readily apparent from these allegations, none of these professors taught in the same discipline as plaintiff and thus plaintiff has failed to prove that " 'all of the relevant aspects of' [her] employment situation were 'nearly identical'

to those of the [employees] to whom [she] compared [her]self." *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir.1997) (citations omitted); *King v. Georgetown Univ. Hosp.,* 9 F.Supp.2d 4, 7 (D.D.C.1998) (holding that plaintiff failed to establish a prima facie case under Title VII where she failed to demonstrate that a similarly situated non-minority employee was given her position. Although plaintiff pointed to a white male nurse as similarly situated, the court found that "the white male nurse's salary and rank were significantly lower than [p]laintiff's" and thus concluded that he was not similarly situated to plaintiff).[14]

The only allegation made by plaintiff in her complaint and alluded to in her opposition about a similarly situated person that might support a disparate treatment claim is her allegation that the position for Chairperson of the Department of Biological and Environmental Sciences became open in August 1999, and that this position was subsequently given to Dr. Freddie Dixon, a black female with less experience than plaintiff. Compl. ¶ 21. Rachel Petty, former Dean of the College of Arts and Sciences, states in her affidavit that Freddie Dixon was chosen to succeed Dr. Carolyn Cousin as chair of the Department of Biological and Environmental Sciences "after consultation with the faculty of that department, pursuant to [D.C. regulations]." Affidavit of Rachel Petty, UDC Professor, dated May 30, 2002, ("Petty Aff.") ¶ 5. Dr. Guerrero was not considered "because she would no longer be on the faculty; she had been RIFed." *Id.*

---

13. Defendants note that Dr. Nimmons' teaching discipline is history and he was to return to the university in August, 2002, as a visiting professor, which is a temporary appointment not subject to the collective bargaining agreement. Defs.' Mot. at 15.

14. Furthermore, according to an affidavit submitted by the defendants, "[t]he University

has no obligation to notify Dr. Guerrero of any position vacancies at the University except regular faculty positions in the discipline of Environmental Science. That obligation will expire on August 16, 2002." Affidavit of Rachel Petty, UDC Professor, dated May 30, 2002 ("Petty Aff.") ¶ 10; see also Defs.' Mot. Ex. 8 at 55.

In her complaint, plaintiff asserted that "[u]pon information and belief, Dr. Dixon was selected in violation of established procedures whereby the Chairperson is elected by the other faculty members." Compl. ¶ 21. However, in her opposition plaintiff fails to provide any evidence to support this factual allegation nor does she allege that she had seniority rights over Dr. Dixon. Indeed, plaintiff does not even address the standard for reviewing a summary judgment motion. As stated previously, to overcome defendant's arguments, if the moving party makes a sufficient showing pursuant to Rule 56(c), then plaintiff, as the nonmoving party, must come forward with affidavits and/or other evidence as provided by Rule 56(e), setting forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As the party opposing summary judgment, plaintiff may not rest upon mere allegations or denials of the adverse party's pleading. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587, 106 S.Ct. 1348.[15] That is all plaintiff has done. Plaintiff's conclusory allegations contained in her affidavit and her opposition do not suffice to refute defendants' evidence. Therefore, she has failed to establish that she was similarly situated to Dr. Dixon and, despite this fact, Dr. Dixon was treated more favorably than she was.

### (2) Plaintiff's Retaliation Claim

██ Regarding her claim of retaliation, plaintiff alleges that the defendants retaliated against her "for filing a charge of employment discrimination by failing to recall her from the 1999 RIF when all other faculty members in her college have been recalled." Compl. ¶ 39. To establish a prima facie case of retaliation, plaintiff must establish that she (1) engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that the adverse action is causally related to her participation in the protected activity. *Cones v. Shalala*, 199 F.3d 512, 521 (D.C.Cir.2000). Once the plaintiff has established a prima facie case of discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse action]." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see also Cones*, 199 F.3d at 520–21 (D.C.Cir.2000) (holding that the Supreme Court's burden shifting framework also applies to retaliation claims brought under Title VII) (citing *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1423 (D.C.Cir.1988)). Once the employer has proffered a non-discriminatory rationale for its employment decisions, the plaintiff must show that the asserted justification is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817; *Cones*, 199 F.3d at 521. To satisfy her burden, plaintiff "must prove both that the defendant's reason is false, and that discrimination was the real reason" for the action taken against her. *Hastie v. Henderson*, 121 F.Supp.2d 72, 78 (D.D.C. 2000), *aff'd*, No. 00–5423, 2001 WL 793715 (D.C.Cir. June 28, 2001) (citations omitted). However, a plaintiff may not rest on mere speculation alone but "must produce some *objective* evidence showing that defendant's proffered reasons are mere pre-

---

**15.** The Court notes that plaintiff requested and received an order from this Court permitting her to conduct "limited discovery for the sole purpose of adequately responding to defendants' motion." Order dated June 6, 2002. According to the representations of defendants, plaintiff did not conduct any discovery whatsoever, despite the Court's order. *See* Reply Memorandum of Points and Authorities in Support of Motion of Defendants University of the District of Columbia and Rachel Petty to Dismiss or for Summary Judgment at 3.

text." *Kidane v. Northwest Airlines*, 41 F.Supp.2d 12, 18 (D.D.C.1999) (citation omitted) (emphasis added).

■ Assuming plaintiff has established a prima facie case of retaliation,[16] she has failed to refute defendants' articulated, legitimate reason for not recalling her—the fact that she was fourth on the seniority list in her teaching discipline and did not properly assert a bumping claims right which would have potentially resulted in her being re-hired in another teaching discipline. Although plaintiff disputes that Mr. Preer told her that there were four people in her teaching discipline senior to her, she does not offer any proof that disputes defendants' evidence which shows that four other former faculty members more senior to her in her teaching discipline were eligible for reinstatement. *See* Defs.' Mot. Ex. 3, Letter to Dr. Julius F. Nimmons from Beverly J. Anderson dated May 25, 1999 (includes a list of Faculty Accepting Reinstatement from 1997 RIF); Affidavit of Christine Poole ("Poole Aff."), Director of the Office of Human Resources, ¶ 3; Poole Aff. Ex. A. Moreover, plaintiff has presented no evidence to demonstrate that there were people less senior

to her who taught in her discipline and who have been reinstated.[17] Nor does plaintiff refute Mr. Preer's statement in his affidavit that she did not assert a bumping rights claim, which would have entitled plaintiff to be placed in another teaching discipline if she was senior to another faculty member in that discipline. Preer Aff. ¶ 11; Plaintiff's Statement of Material Facts Genuinely Subject to Dispute ("Pl.'s Stmt.") ¶ 16. Although plaintiff in her Statement of Material Facts Genuinely Subject to Dispute indicates that "[t]here are no time limitations in the CBA for Plaintiff to exercise her bumping rights ..." *id.* ¶ 16,[18] this does not refute the fact that plaintiff had not previously asserted a bumping rights claim and therefore was not entitled to be placed in a position outside her teaching discipline of environmental science. In addition, even if she had asserted a bumping rights claim, plaintiff has not established that she would have necessarily been qualified to teach in the other disciplines. For example, although she asserts that she would be better qualified for a teaching position in Biology than the person chosen because she has been a certified wildlife biologist since

16. To the extent that plaintiff claims that she was not selected for the position announced in 1999, it is unclear how her non-selection was a retaliatory act when she did not file her EEOC complaint until October, 2000.

17. Plaintiff does allege that Professor Ganganna, who according to plaintiff, has a seniority date of 1988, was retained out of seniority order. Compl. ¶ 29; Pl.'s Opp. at 7. However, plaintiff presents no evidence to dispute the fact that Professor Ganganna, who taught in the discipline of Nutrition and Food Science, was retained because her retention was critical to the viability of the Nutrition and Food Science program, which although it is a part of the Department of Biological and Environmental Sciences, is not the area of discipline from which plaintiff was released (environmental science). Defs.' Mot., Ex. 3 at 4; Defs.' Mot. at 14.

18. Plaintiff does acknowledge that "[i]t can be alleged that her bumping rights end at the end of the 36 months, after her name is placed on the recall list." Pl.'s Stmt. ¶ 16. And according to the Fourth Master Agreement, any RIF'ed employee "shall be placed on a list to be known as a RIF'd Employee List and shall retain all prior rights accrued up to date." Defs.' Mot. Ex. 8 at 55. Each RIF'ed employee shall remain on the list "for a period not to exceed thirty-six (36) months from the date of [her] placement on the list. The most senior faculty member shall be the first name placed on the list." *Id.* Therefore, as plaintiff has not claimed to have alleged a bumping rights claim within the 36 months after she was RIF'ed, she is not entitled to exercise her bumping rights at this time.

1980, Pl.'s Aff. ¶ 7, she does not establish that she has been "assigned and taught in that discipline in an academic department at the University[,]" a requirement for asserting a bumping rights claim. Defs.' Mot. Ex. 8 at 54. Therefore, defendants are entitled to summary judgment on plaintiff's retaliation claim.

### D. Service of Process on Defendant Petty

[10] Since the filing of the defendants' motion, plaintiff has provided this Court with an affidavit of service indicating that Dr. Rachel Petty was served on September 14, 2002. The amended complaint that is currently operative in this matter was filed on July 30, 2002. The Court did not order plaintiff to serve the amended complaint within a specified time period. Federal Rule of Civil Procedure 4(m) provides that service of the summons and the complaint must be made within 120 days after the filing of the complaint.[19] Using that same time period for the service of an amended complaint, the Court calculates that plaintiff had until November 30, 2002, to effectuate proper service on defendant Petty. Therefore, the complaint as to defendant Petty will not be dismissed.

### III. Conclusion

For the reasons stated above, defendant Board of Trustees is entitled to the dismissal of plaintiff's Section 1983 claims and is granted summary judgment on plaintiff's Title VII claims. Defendant Petty, however, is not entitled to the dismissal of the complaint against her based upon her claim of improper service or process. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

### AMENDED ORDER

For the reasons set forth in the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that defendants' motion to dismiss or, in the alternative, for summary judgment [# 20] is granted in part and denied in part. It is further

**ORDERED** that plaintiff's Section 1983 claims are dismissed. It is further

**ORDERED** that summary judgment is granted in defendants' favor regarding plaintiff's Title VII disparate treatment and retaliation claims. It is further

**ORDERED** that the complaint will not be dismissed pertaining to defendant Rachel Petty based upon improper service. It is further

**ORDERED** that the Motion of University of the District of Columbia and Rachel Petty to Strike the July 30, 2002, Amended Complaint [# 24] is denied.

---

19. Neither party indicates the amount of time plaintiff had to file her amended complaint. However, the federal rules provide for the filing of an amended complaint when a party is changed within the time for service permitted by Federal Rule of Civil Procedure 4(m). *See* Fed.R.Civ.P. 15(c). Pursuant to Federal Rule of Civil Procedure 15(c):

An amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the same conduct transaction, or occurrence set forth or attempted to be set forth in the original pleading; or (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.